SANFORD et al. v. GREGG, Auditor General.

(Circuit Court, E. D. Pennsylvania. June 6, 1893.)

No. 4.

1. TAXATION—FOREIGN JOINT-STOCK COMPANIES—CORPORATIONS.
    The Adams Express Company, a joint-stock association, organized in New York, and having its property vested in trustees, in whose name all legal proceedings are conducted, the interests of the members being represented by shares, which are transferable on certain conditions, and the company not being dissolved by the death or insolvency of a shareholder, is not a corporation; and therefore its capital stock was not taxable under the Pennsylvania statutes of 1868, 1874, 1877, and 1879, as being the stock of a company "incorporated by another state" and doing business in Pennsylvania. .

2. FEDERAL COURTS—JURISDICTION—SUITS AGAINST STATES—WHAT ARE.
    A suit to enjoin a state officer from assessing or enforcing a tax for which there is no authority or warrant under the state laws is not in substance a suit against the state, within the prohibition of the eleventh amendment to the constitution of the United States.

3. SAME—ILLEGAL TAXATION—INJUNCTION BY FEDERAL COURTS.
    While the federal courts are extremely cautious about interfering with the collection of current state revenues, yet they will not decline to enjoin a settlement of illegal back taxes, which threatens to create a cloud on real estate.

4. EQUITY JURISDICTION—QUIETING TITLE—TAXATION.
    A settlement of alleged illegal back taxes, which, when the proper steps are taken, will constitute a lien on real estate, constitutes such a threat to create a cloud on title as will authorize the interference of equity; and an allegation by the taxing officers that they do not intend to take the steps necessary to create the lien does not oust the jurisdiction.

In Equity.  Suit by Henry Sanford, Clarence A. Seward, and L. C. Weir, trustees of the Adams Express Company, to enjoin D. McM. Gregg, auditor general of the commonwealth of Pennsylvania, from making a settlement of taxes against the capital stock of the express company from May 1, 1868, to the first Monday of November, 1888.  By stipulation of counsel the case was heard upon the bill, supplemental bill, and answer, upon a motion for injunction, with the same effect as if the same were at issue upon the pleadings and proofs for a determination of the merits and for final decree.  Injunction granted.

The language of the various acts of assembly of Pennsylvania, under which this tax is claimed upon the capital stock of the Adams Express Company is as follows: Section 4, Act May 1, 1868: "That the capital stock of all companies whatever, incorporated by or under any law of this commonwealth, or incorporated by any other state, and legally doing business in this commonwealth, shall be subject to pay a tax into the treasury at the rate of * * * upon the valuation of the capital stock of the same." Fifth section of Act April 24, 1874: "That every company whatever now or hereafter incorporated under any law of this commonwealth, or now or hereafter incorporated under the laws of any other state and doing business in this commonwealth * * * shall be subject to pay a tax * * * annually at the rate of * * * upon its common or preferred stock. * * *" Third section of Act March 20, 1877: "Every company or association whatever, now or hereafter incorporated by or under any law of this commonwealth, or now or hereafter incorporated by or under the laws of' any other state or country and doing business in this commonwealth," shall pay a tax on capi-

tal stock. The language of the fourth section of the act of June 7, 1879, (P. L. 114,) is identical, as far as pertinent, with that of 1877.

The Adams Express Company is a joint-stock association, formed in New York in 1854, under articles of association which contain the following provisions in substance:

(a) The subscribers declare "that we, for ourselves and our associates and successors, have associated together as a joint-stock association for carrying on the business of express forwarding."

(b) "Every person or corporation or company who shall contribute to the joint stock, or who shall be admitted and acquire interests in the business of this company, shall participate in its profits and share in its losses."

(c) The property of the company was divided into 12,000 shares of stock, with the right to increase or diminish their number. The shares are to be represented by proper certificates which shall be from time to time issued by the association. The association was authorized "to receive from any persons, corporations, or associations subscriptions for shares, the contribution or payment for which shall be called in" by assessments to be levied or suits to be brought under the tenth provision of the certificate.

(d) The persons signing that certificate declare they were owners of shares, 10,769 shares. The balance was to be disposed of as the managers direct.

(e) The name of the association was the Adams Express Company. The business of the association could be carried on at the option and direction of the board of managers in that name or in the names of such associations or local express firms as are now or may be established and known to the public, and which may be purchased up by this association; and such persons, corporations, and associations as shall be admitted to and contribute or be members of the association by acquiring the interests of others should also be members of this association.

(f) Any person, corporation, or association entitled to any shares could transfer his or their interest, in whole or in part, under certain conditions, on the books of the association.

(g) The death of any shareholder, or the assignment by an insolvent debtor of his interest in the property of the association, should not dissolve the same; but the representatives or the assignee of such shareholder may transfer their shares in the manner and under the conditions aforesaid.

(h) "The property and effects of the association, or committed to their charge and custody, * * * shall be in the exclusive possession and custody of the trustees, consisting of the president and two of the managers, in whom the same shall legally vest, subject always to the accountability therefor justly growing out of these presents, in the name of which trustees or the president all legal proceedings of the association shall be conducted as permitted by law."

(i) Upon the change of any of those trustees, their substitutes, or, upon the death of any of them, their survivor or survivors, shall succeed to and exercise the above powers.

(j) The board of managers, consisting of nine persons, was appointed with power to select from their own number a treasurer and secretary, and to elect a president and vice president. The managers could direct the hiring, purchase, or sale for the association of any personal property which they may think necessary or proper for the conduct or in aid of the business of the association, even to the extent of being common carriers on the portions of their routes, and could insure or reinsure anything committed to the charge of the association.

(k) Annual meetings are fixed for the second Wednesday of February, and provisions made for calling special meetings.

(l) Assessments may be made upon any shareholder upon his shares for paying up his subscription, or ratably meeting the losses or claims of the association beyond its available resources at the time.

(m) Dividends of the profits may be declared by the managers to such extent as they from time to time may provide.

(n) The authentication by the secretary and the president or vice president and treasurer or secretary of all acts, obligations, powers, and documents of the association.

John Hampton Barnes, Geo. Tucker Bispham, and Wayne Mac-Veagh, for complainants.

(1) It is submitted that the provisions of the articles of association fall short of the characteristics of a corporation.

"A corporation is a body consisting of one or more persons established by law for certain specific purposes, with the capacity of succession, either perpetual or for a limited period, and other special privileges not possessed by individuals." (Definition from American & English Encyclopaedia of Law.) Such an organization can only be created by the action of the law and authority of the government, and not by the agreement of the parties. Stowe v. Flagg, 72 Ill. 397; Atkinson v. Railroad Co., 15 Ohio St. 21; People v. Assessors of Watertown, 1 Hill, (N. Y.) 616; State v. Bradford, 32 Vt. 50. It follows that a corporation can have no legal existence out of the state creating it. The exercise of any power in another state depends upon the will of that state. Bank v. Earle, 13 Pet. 519; Railroad Co. v. Wheeler, 1 Black, 286. The statutes of Pennsylvania under which the right is claimed to settle these taxes refer to companies incorporated under the law of another state and ·doing business in this commonwealth. Their purpose was to recognize corporations created by law of another state and doing business in this state, and the authority to do such business must be expressly granted, as shown in the decisions above cited.

The Adams Express Company was not established by law or under the authority of any government. It is a voluntary association of individuals. All of the powers granted by the said articles of association may be lawfully created by agreement between the parties. There is no assumption of any power expressly reserved to corporations. The provision making the shares assignable without causing dissolution is not contrary to the policy of the law, and is expressly authorized by the joint-stock company act of the state of Pennsylvania. See Act Pa. June 2, 1874. The members of such organization have the right, under that act, to elect purchasers of stock members of the association. A similar power has been recognized and held to be within the power of individuals in the case of Gleason v. McKay, 134 Mass. 419, and it is competent for ·partners to agree that death shall not dissolve the copartnership. 1 Pars. Cont. § 200; Tyrrell v. Washburn, 6 Allen, 475, 476; Pearce v. Chamberlain, 2 Ves. Sr. 33; Kingman v. Spurr, 7 Pick. 235. The designation of the trustees as the parties to whom property was to be conveyed for the benefit of the copartnership was lawful without statutory authorization, and was not the exercise of a corporate power. Corporations take and convey real estate by their corporate name, and under their corporate seal. A copartner may, in his own name, take title to firm real estate purchased with the partnership fund, and it then becomes partnership property, and is subject to its liabilities, and is divisible on liquidation, and can be sold by the authority of the firm; and until the firm's affairs are settled it is personal property. Lindl. Partn. 642; Id., Wentworth's Notes, 342; Pars. Partn. 372; Moderwell v. Mullison, 21 Pa. St. 257, 259; Van Brunt v. Applegate, 44 N. Y. 544.

The title to the property being in the three trustees, it was proper to give them the power to sue in relation thereto; and, indeed, only those named in the transfers, to wit, the three trustees, could sue, (Metcalfe v. Rycroft, 6 Maule & S. 75; Scott v. Godwin, 1 Bos. & P. 67,) and dormant partners need not join, (Mitchell v. Dall, 2 Har. & G. 171.) The delegation of power to the president to sue has been reaffirmed by the State Code of New York, which authorizes (section 1919) suits in the name of the president or treasurer, where the association consists of seven or more persons, but only when the association is "unincorporated." Like power exists both at law and in equity. Chamberlain of London's Case, 5 Coke, 62b; Smith v. Swormstedt, 16 How. 302. Moreover, the right of suing or being sued in the name of a president is not a corporate power or privilege. The corporate power or privilege is to sue and be sued in the corporate name. There is no attempt in the articles to determine against whom suit must be brought. The designation is. limited to suits by and on behalf of the association. The acts of assembly in Pennsylvania, referring as they do to corporations incorporated under the

laws of another state, must be the guide of the kind of organization intended to be effected, and a controlling test of the character of such organization is found in the status which it occupies in the state in which it exists.

The character of the association of the members of the Adams Express Company and of other similar organizations has been before the courts of the state of New York at various times. The organization has been held to be a partnership, and not a corporation. Whitman v. Hubbell, 30 Fed. Rep. 81. See, also, Chapman v. Barney, (1889,) 9 Sup. Ct. Rep. 426, 129 U. S. 677; Dinsmore v. Railroad Co., 2 Wkly. Notes Cas. 275; Hoey v. Coleman, (1891,) 46 Fed. Rep. 221; People v. Coleman, 31 N. E. Rep. 96, 133 N. Y. 279; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566.

(2) The taxation of the shares held by the members in the Adams Express Company as stock of a corporation is therefore contrary to law, and injunction is the only remedy.

The right to come into equity is undoubted in this case, unless the remedy at law is adequate and efficient in protection of the complainant's rights, and the complainant is deprived of its right to come into a federal court. The parties are residents of a different state, and the complainant entitled to bring its action in the federal court. There is no legal remedy which will protect them in that court, and therefore equity is the only channel open to it through which to enforce its rights. The fact that there is a remedy of another kind under a state statute in a state court would not oust the equitable jurisdiction of the United States court. Livingston v. Story, 9 Pet. 632; Barber v. Barber, 21 How. 592; Kirby v. Railroad Co., 7 Sup. Ct. Rep. 430, 120 U. S. 138. Where the circuit court has jurisdiction of the parties, it will restrain the collection of illegal taxes by the writ of injunction.

Osborn v. Bank, 9 Wheat. 738. "A state cannot tax the Bank of the United States, and any attempt on the part of its agents and officers to enforce the collection of such tax against the property of the bank may be restrained by an injunction of the circuit court." See, also, Shelton v. Platt, 11 Sup. Ct. Rep. 646, 139 U. S. 600; British Foreign Marine Ins. Co. v. Board of Assessors, 42 Fed. Rep. 90.

## B. H. Bristow, of counsel, for complainants.

First. The proposed tax is without authority of law.

The statute, by its terms, imposes the tax upon "companies now or hereafter incorporated by or under any law of this commonwealth and companies incorporated by any other state and doing business in this commonwealth." The Adams Express Company is merely a joint-stock association. Upon several occasions the predecessors of the present auditor general, on their attention being drawn to the facts, have concluded that the company did not come within the language of this statute. The legislature of the state has shown its concurrence in this view, for in 1889 the statute was amended by inserting the words "joint-stock association and limited partnership," indicating that the language previously used did not embrace such associations, and the tax under this statute has been annually settled and paid without question; and it is absolutely settled by authority that a joint-stock association is not a corporation. This has been held by controlling authority in cases regarding express companies. Thus in Chapman v. Barney, 9 Sup. Ct. Rep. 426, 129 U. S. 677, where the United States Express Company was involved, it was said: "The allegation of the amended petition is that the company is a joint-stock company, organized under a law of the state of New York, and a citizen of that state. But the express company cannot be a citizen of New York, within the meaning of the statutes regulating jurisdiction, unless it be a corporation. The allegation that the company was organized under the laws of New York is not an allegation that it is a corporation. In fact, the allegation is that the company is not a corporation, but a joint-stock company— that is, a mere partnership." Page 682, 129 U. S., and page 428, 9 Sup. Ct. Rep. To the same effect is Dinsmore v. Railroad Co., 2 Wkly. Notes Cas. 275. Again, in Whitman v. Hubbell, 30 Fed. Rep. 81, it is said the "Adams Express Company is a partnership, and not a corporation." Again, in Hoey v. Coleman, 46 Fed. Rep. 221, the precise point was decided. The statute of New York which was there in question subjected to taxation "all moneyed

or stock corporations deriving an income or profit from their capital or otherwise." The tax commissioners of New York claimed that this language covered the Adams Express Company, but the court (Wallace, J.) held that "the proposition that the Adams Express Company is not a corporation in legal definition is too self-evident for discussion." Page 222.

Still further, there is no suggestion in the present case that the Adams Express Company is a "company incorporated by or under any law of this commonwealth." No action in that regard has ever been taken by the state of Pennsylvania. The claim of the defendants must then rest wholly upon the ground that it is "a company incorporated by another state," namely, New York. But upon that subject there is conclusive authority to the contrary, for no possible difference in legal effect can be suggested between the language of the New York statute, "a corporation," and that of the Pennsylvania statute, "a company incorporated by any state." In People v. Coleman, the precise question was whether a joint-stock association—in that case the National Express Company—is a corporation under the laws of New York. At the special term it was held, in an exhaustive opinion, that the statutes of the state did not have the effect of rendering such an association a corporation. Reported 5 N. Y. Supp. 394. This decision was affirmed by the general term, (reported 13 N. Y. Supp. 833,) and by the court of appeals, (reported 31 N. E. Rep. 96, 133 N. Y. 279.) The court of last resort, upon a review of all the statutes, held with great positiveness that they did not have the effect of incorporating a joint-stock association such as an express company. Under elementary rules this construction of the statutes of New York by the courts of that state is conclusive here. Norton v. Shelby Co., 6 Sup. Ct. Rep. 1121, 118 U. S. 425, 439; Gormley v. Clark, 10 Sup. Ct. Rep. 554, 134 U. S. 338, 348; Stutsman Co. v. Wallace, 12 Sup. Ct. Rep. 227, 142 U. S. 293, 306. And it was so regarded in Hoey v. Coleman, 46 Fed. Rep. 221. Precisely the same thing is held in Gleason v. McKay, 134 Mass. 419.

It is, therefore, settled beyond controversy by controlling authority that the Adams Express Company is not within the terms of the statute now involved; that the proposed tax is wholly unwarranted by law. The sole question open for discussion is whether or not this court of equity has jurisdiction to restrain the enforcement of this unlawful demand.

Second. The court has jurisdiction to entertain this suit.

The question of the jurisdiction of equity under such circumstances depends upon the nature of the remedy at law. To exclude jurisdiction in equity the remedy at law must be "as practical and efficient to the ends of justice and to its prompt administration as the remedy in equity." Oelrichs v. Spain, 15 Wall. 228; Kilbourn v. Sunderland, 9 Sup. Ct. Rep. 594, 130 U. S. 505. The courts of Pennsylvania are clothed by statute with the power to "prevent or restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community, or the rights of individuals." Bitting's Appeal, 105 Pa. St. 520. Under this it had been held that "equitable jurisdiction does not depend on the want of a common-law remedy, for, while there may be such a remedy, it may be inadequate to meet all the requirements of a given case, or to effect complete justice between the contending parties; hence the exercise of chancery powers must often depend on the sound discretion of the court. Bierbower's Appeal, 107 Pa. St. 14. So a bill may be sustained solely on the ground that it is the most convenient remedy. Kirkpatrick v. McDonald, 11 Pa. St. 387." Appeal of Brush Electric Co., 7 Atl. Rep. 794, 114 Pa. St. 585. As has been said in a similar case: "The state cannot be sued, and if the courts do not interfere, and the tax be collected and paid over by the cashier, there is no remedy either to the bank or to the stockholder." Agnew, J., Markoe v. Hartranft, 6 Amer. Law Reg. (N. S.) 487.

When it is necessary to prevent or cancel a cloud upon the title to real estate by the use of extrinsic evidence, or to prevent a multiplicity of suits, equity has jurisdiction. Hannewinkle v. Georgetown, 15 Wall. 547; Union Pac. R. Co. v. Cheyenne, 5 Sup. Ct. Rep. 601, 113 U. S. 516; Shelton v. Platt, 11 Sup. Ct. Rep. 646, 139 U. S. 591; Allen v. Car Co., 11 Sup. Ct. Rep. 682, 139 U. S. 658; Express Co. v. Seibert, 12 Sup. Ct. Rep. 250, 142 U. S. 339. Within these principles there have been many recent instances of injunc-

tions in cases of taxation. Pelton v. Bank, 101 U. S. 143; New Orleans v. Houston, 7 Sup. Ct. Rep. 198, 119 U. S. 265; Ratterman v. Telegraph Co., 8 Sup. Ct. Rep. 1127, 127 U. S. 411; Railroad Co. v. Gaines, 3 Fed. Rep. 266; First Nat. Bank of Richmond v. City of Richmond, 39 Fed. Rep. 309; British Foreign Marine Ins. Co. v. Board of Assessors, 42 Fed. Rep. 90; American Fertilizing Co. v. Board of Agriculture of North Carolina, 43 Fed. Rep. 609; Land Co. v. Gowen, 48 Fed. Rep. 771. It is manifest that both of these grounds of jurisdiction exist here within the controlling authorities.

The court has jurisdiction upon the ground that the threatened tax will constitute a cloud upon the title to the real estate which can be removed only by extrinsic evidence.

If the tax be imposed in form upon the Adams Express Company it will constitute a presumptively valid "lien upon the personal and real property of the company against whom the tax is assessed," and therefore a lien upon the real estate, which, as disclosed by the bill, the company owns and holds in its possession. Manifestly extrinsic evidence alone can show that this tax imposed in form upon the association as a corporation and under the statute authorizing taxes upon corporations is invalid, because the company is not in fact a corporation. In order to establish that fact, extrinsic proof would be requisite regarding the character of the company's organization. It is well settled that equity, under such circumstances, will entertain jurisdiction to prevent (DeWitt v. Van Schoyk, 17 N. E. Rep. 425, 110 N. Y. 7) or cancel a cloud upon the title to real estate, (Cooley, Tax'n, 543.) There are many applications of this rule. In Gage v. Kaufman, 10 Sup. Ct. Rep. 406, 133 U. S. 471, the suit was to cancel a tax deed as a cloud upon the title upon grounds necessitating extrinsic proof. There was a demurrer for want of equity. The court held that in a bill in equity was the proper form of obtaining relief upon the grounds alleged. In Lyon v. Alley, 9 Sup. Ct. Rep. 480, 130 U. S. 177, relief against a tax sale was granted in equity upon the ground that the facts showing its invalidity could only be established by extrinsic proof. In Dull's Appeal, 6 Atl. Rep. 540, 113 Pa. St. 510, where there was an outstanding tax deed which was shown by parol evidence to be invalid, it was held that equity had jurisdiction to entertain a suit for its cancellation. In Stewart v. Crysler, 3 N. E. Rep. 471, 100 N. Y. 378, the suit was to cancel a tax deed as a cloud upon the title. The ground alleged was that the lands were assessed as nonresident property, whereas in fact they were occupied by a resident of the town, and therefore, under the statutes, should be assessed to the occupant. The court held that, inasmuch as extrinsic proof was necessary, equity had jurisdiction. The same thing was held in People ex rel. Barnard v. Wemple, 22 N. E. Rep. 761, 117 N. Y. 77.

To the same effect are Union Pac. R. Co. v. Cheyenne, 5 Sup. Ct. Rep. 601, 113 U. S. 516; Land Co. v. Gowen, 48 Fed. Rep. 771; Town of Springport v. Teutonia Sav. Bank, 75 N. Y. 397; Paper Co. v. O'Dougherty, 81 N. Y. 474; Rumsey v. City of Buffalo, 97 N. Y. 114; Seminary v. Cramer, 98 N. Y. 121.

Lyman D. Gilbert, John H. Weiss, James A. Stranahan, Dep. Atty. Gen., and W. U. Hensel, Atty. Gen., for defendant.

I. The Adams Express Company is liable to taxation under the laws of Pennsylvania for taxes accruing between the years 1868 and 188 , and the settlement of March 8, 1893, against said company by Auditor General Gregg and State Treasurer Morrison for capital stock from May 1, 1838, to the first Monday of November, 1889, as found on page 7 of the plaintiff's supplemental bill, and on page 14 of defendant's answer, was a lawful settlement under the laws of Pennsylvania, and must be so adjudged by this court if it shall take jurisdiction of the subject.

An inquiry into the character of that company requires an examination of the statutes of New York which preceded its creation, and of the grant of powers made by them to it. On 7th April, 1849, the legislature of that state passed the following act of assembly:

"An act in relation to suits by and against joint-stock companies and associations.

"1. Any joint-stock company or association, consisting of seven or more shareholders or associates, may sue and be sued, in the name of the president

or treasurer, for the time being, of such joint-stock company or association; and all suits and proceedings so prosecuted by or against any such joint-stock company or association and all process or papers in such suits and proceedings on the president or treasurer for the time being of such joint-stock company or association shall have the same force and effect as regards the joint rights, property and effects of said joint-stock company or association, as if such suits and proceedings were prosecuted in the names of all the shareholders or associates in the manner now provided by law.

"2. No suit so commenced shall abate by reason of the death, removal or resignation of such president or treasurer of such joint-stock company or association, or the death or legal incapacity of any shareholder or associate during the pendency of such suit; but the same may be continued by or against the successor of the officer in whose name such suits shall have been commenced.

"3. The president or treasurer of any such joint-stock company or association shall not be liable in his own person or property, by reason of any suit prosecuted as above provided, by or against him, as nominal plaintiff or defendant therein; provided that such president or treasurer shall not be exempted from any liability to which he may be otherwise legally subject as a stockholder or shareholder in such joint-stock company or association.

"4. Nothing herein contained shall be construed to deprive the plaintiff of the right after judgment shall have been obtained against any such joint-stock company or association, as above provided, from suing all or any of the shareholders or associates therein individually as now provided by law, or of the right to proceed, in the first instance, against the persons constituting any such joint-stock company or association, in the manner now provided by law; but if it shall appear to any court in which any suit shall be prosecuted otherwise than as provided in the first section of this act, that the same is so prosecuted for the purpose of vexatiously or oppressively enhancing costs, such court shall not allow any more costs to be taxed and recovered in such suit than would be taxable and recoverable in case such suit was prosecuted in the manner provided in the first section of this act.

"5. Nothing herein contained shall be construed to confer on the joint-stock companies or associations mentioned in the first section of this act any of the rights or privileges of corporations except as herein specially provided."

Chapter 258, Laws N. Y: 72d Sess. 1849.

On 9th July, 1851, the legislature of that state passed the following additional act of assembly:

"An act to extend 'the act in relation to suits by and against joint-stock companies and associations' to companies having a joint or common interest in property.

"1. The act entitled 'An act in relation to suits by and against joint-stock companies and associations,' passed April 7, 1849, is hereby extended to any company or association composed of not less than seven persons who are owners of or have an interest in any property, right of action or demand, jointly or in common, or who may be liable to any action on account of such ownership or interest; and the suits and proceedings authorized by the said act may be brought and maintained in the manner therein provided as well for any cause of action heretofore existing as for any that may hereafter occur.

"2. This act shall take effect immediately."

Chapter 455, Laws N. Y. 74th Sess. 1851.

On the 15th April, 1854, the legislature of that state passed the following act of assembly:

"An act to amend and in addition to the several acts relative to joint-stock companies.

"Whenever in pursuance of its articles of association the property of any joint-stock association is represented by shares of stock, it may be lawful for said association to provide by their articles of association that the death of any stockholder or the assignment of his stock shall not work a dissolution of

the association, but it shall continue as before, nor shall such company be dissolved except by judgment of a court for fraud in its management or other good cause to such court shown, or in pursuance of its articles of association.

"2. Such association may also by its articles of association provide that the shareholders may devolve upon any three or more of the partners the sole management of their business.

"3. This act shall in no court be construed to give said associations any rights, or privileges as corporations."

Chapter 245, Laws N. Y. 77th Sess. 1854.

The effect of this legislation, so far as it is material to the present inquiry. was to sanction the organization of joint-stock associations and companies, and to confer the following artificial powers upon them: To permit any joint-stock company or association which did not consist of less than seven shareholders or associates to sue and be sued in the name of the president or treasurer, the service of all processes or papers in such suits to be made on the president or treasurer of such company or association, with the same effect as if the suits were prosecuted in the name of all the shareholders or associates; to prevent the abatement of any suit by reason of the death, removal, or resignation of such officer of such company or association, or by the death or legal incapacity of any shareholder or associate during the pendency of a suit; to permit any joint-stock association whose property, in pursuance of its articles of association, is represented by shares of stock, to provide in its articles of association that the death of any stockholder, or the assignment of his stock, shall not work a dissolution of the association; to provide that such company shall not be dissolved except by judgment of a court for fraud in its management, or other good cause to such court shown, or in pursuance of its articles of association, and to allow the shareholders to declare in their articles of association that the sole management of their business may devolve upon three or more of their partners. .

After the passage of this legislation. 18 gentlemen, on the 1st of July, 1854, entered into articles of association creating the Adams Express Company, and designating the city of New York as its principal place of business.

These articles of association sufficiently show that the Adams Express Company was formed under the legislation already mentioned, and that the artificial powers it enjoys are expressly sanctioned by that legislation, and derived from it. The character of these associations, in respect to state taxation, was made the subject of judicial inquiry in New York, and in the case of People ex rel. Platt v. Wemple, 22 N. E. Rep. 1046, 117 N. Y. 136, the court there declared that the words "incorporated or organized under any law of this state," as used in the tax act of 1881, "are not to be taken in a technical or restricted sense, and confined to associations brought into being according to the formality of the statute, but as including any combination of individuals upon terms which embody or adopt as rules or regulations of business the enabling provisions of the statutes, and, so far as possible for it, assume an independent personality, and claim privileges not possessed by individuals or copartnerships." The court in that case held that the United States Express Company, a corporation of the same character as the Adams Express Company, must be deemed to be incorporated for purposes of taxation, and as such was taxable under the revenue laws of that state.

In People v. Coleman, 31 N. E. Rep. 96, 133 N. Y. 279, this decision was reversed upon these grounds: The distinction between joint-stock companies or associations and corporations was said to be preserved in the taxing statutes by the use of the words "incorporated" and "organized," and by the fact that the formation of a corporation involves the merging of the common-law liability of the members for debts, and requires the substitution of a new or the retention of the old liability by an affirmative enactment; but in the case of joint-stock associations the common-law liability remains unchanged and unimpaired, needing no statutory intervention to preserve or restore it.

The judicial mind of New York has, therefore, within the short space of three years entertained and expressed conflicting opinions with regard to the liability of the Adams Express Company and similar express companies to taxation under the revenue laws of that state. But whatever difference of judicial opinion may exist in that state, the same questions have elsewhere arisen and been determined in perfect harmony with the view entertained

by this commonwealth of its right to tax the capital stock of the Adams Express Company for the period of time already mentioned.

The case of Oliver v. insurance Co., 100 Mass. 531, presented the following facts: A revenue statute of that commonwealth declared that "each fire, marine and fire and marine insurance company incorporated or associated under the laws of any government or state other than one of the United States shall annually pay to the treasurer of the commonwealth a tax of four per cent. upon all premiums charged or received on contracts made in this commonwealth for the insurance of property, or received or collected by its agents in this commonwealth." A bill in equity was filed by the treasurer of that commonwealth to restrain that company from prosecuting its business in Massachusetts until this tax had been by it paid. The company was an English joint-stock company, organized in 1836 under a deed of settlement, and after that time transacting business under that and two supplemental deeds of settlement, with powers and privileges conferred upon the company by three acts of parliament. Each of those acts expressly stipulated that it should not have the effect to incorporate the company, and the personal liability of the members for the obligations of the association was in each carefully preserved. The argument made on behalf of that company by its very learned counsel completely anticipates the argument presented by the learned counsel for the Adams Express Company, and the latter is a duplication of it. The court, in deciding the question, declared that there could be no doubt that the company was an insurance company associated under the laws of a government other than one of the United States, and that, therefore, it came literally within the terms used in the tax statute. But the decision did not rest upon that point. It was based upon the ascertainment that the company was a corporation within the meaning of the taxing legislation.

This decision has not only never been reversed, but its authority has never been questioned, in the commonwealth of Massachusetts. The cases of Taft v. Ward, 106 Mass. 518, and Railroad v. Pearson, 128 Mass. 445, do not in any manner consider or decide the question of tax liability of associations of this character under the revenue legislation of that or any other state. They deal entirely with questions affecting the liability of the members of such associations for the joint indebtedness, and the remedies to be used for the collection of claims against such associations. Examination, therefore, will sustain, we confidently assert, that under the legislation of Massachusetts associations of the character of the Adams Express Company are taxable under language similar to that used in the statutes of Pennsylvania, which are offered for the consideration of this court.

If ampler authority to sustain this branch of the contention of the commonwealth of Pennsylvania were needed, it can readily be found in the case of Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566. In that case the supreme court of the United States reviews, upon appeal taken by the company from the supreme judicial court of Massachusetts, the decision there pronounced against it, and reported in 100 Mass. 531. The argument of the counsel for the company is given at length, and will be found to be not only substantially, but almost literally, that offered to the view of this court upon this branch of this case by the counsel for the Adams Express Company. Mr. Justice Miller, in considering the character of that company, declares:

"(1) It has a distinctive and artificial name by which it can make contracts.

"(2) It has a statutory provision by which it can sue and be sued in the name of one of its officers as the representative of the whole body, which is bound by the judgment rendered in such suit.

"(3) It has provision for perpetual succession by the transfer and transmission of the shares of its capital stock, whereby new members are introduced in place of those who die or sell out.

"(4) Its existence as an entity, apart from the shareholders, is recognized by the act of parliament which enables it to sue its shareholders and be sued by them."

In all respects the powers which the supreme court of the United States thus found lodged with and enjoyed by that company are precisely those which the Adams Express Company enjoys under the sanction of the laws of the state of New York. The question presented by that case for decision to that court is thus judicially stated: "The question before us is whether an association, such as the one we are considering, in attempting to carry on its

business in a manner which requires corporate powers under legislative sanction, can claim, under a jurisdiction foreign to the one which gave those powers, that it is only a partnership of individuals. We have no hesitation in holding that, as the law of corporations is understood in this country, the association is a corporation, and that the law of Massachusetts, which only permits it to exercise its corporate functions in that state on the condition of payment of the specified tax, is in no violation of the federal constitution or of any treaty protected by said constitution."

That decision not only stands unreversed, but unquestioned by any of the subsequent decisions of that high court. The doctrine announced in Chapman v. Barney, 9 Sup. Ct. Rep. 426, 129 U. S. 677, does not, and was not, in any manner, intended to, conflict with the decision announcing the liability of such associations to an equality of taxation with corporations transacting the same character of business under the laws of any state. Those decisions of the supreme courts of the United States and of Massachusetts are in harmony with the decisions of the other courts which are collected in note 2, p. 28, § 23, 1 Spell. Priv. Corp.; 11 Amer. & Eng. Enc. Law, 1031. 1015, 1051.

The fact to which the counsel for the company have made reference, that joint-stock associations are specifically mentioned in the twenty-first section of the revenue act of June 1, 1889, (P. L. 429,) and are not particularized in any of the earlier statutes imposing tax upon capital stock, does not justify the inference that the Adams Express Company was not taxable upon its capital stock until the passage of the revenue act of 1889. The twenty-third section of the revenue act of 1889 declares that pipe lines shall be taxed upon their gross receipts. The fourth section of the revenue act of April 24, 1874, (P. L. 70,) does not specifically include them among the companies that shall pay this kind of tax. This would be such an omission of companies of that character as would, under the argument now advanced by the Adams Express Company, require the court to hold that pipe-line companies were not taxable under the act of 1874, and could not be made taxable until they had been specifically mentioned in some later taxing statute. This argument the pipe lines invoked in their behalf, but it was rejected, and they were declared to be sufficiently described in the general words of the fourth section of the revenue act of 1874, and were taxable upon their gross receipts. Columbia Conduit Co. v. Com., 90 Pa. St. 307.

The taxing language in these statutes is therefore substantially the same as that contained in the legislation of Massachusetts, which was considered and decided by the courts of that state and of the United States in harmony with the present view of the commonwealth of Pennsylvania. That these questions would be decided in the same manner by the courts of this commonwealth is indicated by the decision in Coal Co. v. Rogers, 108 Pa. St. 147. In that case a limited partnership is called "a quasi corporation," and made subject to the provisions of Act May 8, 1876, p. 142, which authorizes an action for trespass to be brought against "any person or corporation." Such a construction would be in harmony with that which declares that the word "person" in a taxing statute included a corporation. Society v. Yard, 9 Pa. St. 359; Endl. Interp. St. § 87. Such a construction would be in keeping with and required by the constitution of Pennsylvania. Article 16 of that instrument declares by its title that it deals with "private corporations," and yet its thirteenth section contains the following provision:

"Sec. 13. The term 'corporations' as used in this article, shall be construed to include all joint-stock companies or associations having any of the powers or privileges of corporations and not possessed by individuals or partnerships."

The tenth section of that article provides that upon certain terms and conditions "the general assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this constitution, or that may hereafter be granted."

Joint-stock companies can be formed under Act June 2, 1874, (P. L. 271,) and acquire the powers set forth in their written statement. That such companies can be deprived of their privileges by the general assembly cannot successfully be denied, and the grant to the general assembly of this power

of revocation must be found in the constitutional language already quoted. That section, therefore, treats the articles of association of such companies as a charter, and in respect to regulation for the public welfare places such an association upon an equality with corporations created by or doing business within the state.

We therefore respectfully submit that the commonwealth of Pennsylvania, under its constitution, its legislation, and the decisions of its own courts and those of other states and of the United States, is justified in holding that the Adams Express Company is, for purposes of taxation, a quasi corporation, and to be treated like all other corporations created by the authority of Pennsylvania or doing business within its limits, and as such taxable upon that proportion of its capital stock representing property owned by it within the limits of the commonwealth of Pennsylvania.

II. Has this court jurisdiction of the subject-matter of the controversy brought before it?

(a) Are the plaintiffs entitled to equitable relief?

(b) Is the suit in this case in fact and in law a suit against the state of Pennsylvania, and therefore to be dismissed as in violation of the eleventh amendment to the federal constitution?

(a) It is true that plaintiff's bill avers, and the argument of the plaintiff maintains, that the court should take jurisdiction because the threatened tax will constitute a cloud upon the title to real estate.

The answer to this proposition is that, notwithstanding the law of Pennsylvania of March 30, 1811, section 12, (5 Smith's Laws, 231,) declares that the "amount or balance of every account settled agreeably to this act due to the commonwealth shall be deemed and adjudged to be a lien," etc., it has been decided in a very recent case (Wm. Wilson & Son Silversmith Co.'s Estate, 24 Atl. Rep. 636, 150 Pa. St. 289) that it is the duty of the auditor general in all cases to file a certified copy in the county in which the lien is to take effect, and no such lien is created in the event of noncompliance with the act of 1827. Under that act the duty of filing a copy in the county of the debtor is applicable to the settlement of taxes under the act of 1811. The reasons of public policy, which is averse to secret liens, are declared by the supreme court to be applicable to state taxes under the act of 1811.

As the auditor general has neither threatened nor intended to file any such lien, we submit that the apprehensions of the plaintiff are wholly unfounded, and the averments of the answer that no lien has been created by the settlement must be taken to be true. Whatever lien exists or is apprehended exists in the nature of things under the law and from the liability of the company, however that may be finally adjudicated, and it does not arise from nor is it strengthened by the settlement of the auditor general. The plaintiffs, therefore, are entitled to no equitable relief upon the ground that any cloud upon the title of their property, or any obstruction to them in the free use of the same, is threatened. Any such averment in their bill is expressly denied by the answer.

It is contended here, and it must be established, to maintain this proceeding, that the tax here sought to be levied is wholly unwarranted by law, and that the complaining company is not an object of the Pennsylvania taxing statute. If this contention be true, then no real cloud upon the title of the property need be apprehended. Cooley, Tax'n, p. 779.

(b) This proceeding is a proceeding against the state of Pennsylvania, and therefore, under the prohibition of the eleventh amendment to the federal constitution, it cannot be sustained.

That amendment, adopted from considerations of public necessity, which have never been seriously questioned, declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The present suit is—First, the suit of Messrs. Sanford et al. v. The State of Pennsylvania, in which case it must be dismissed from this jurisdiction; or, second, it is a suit of the Adams Express Company v. The State of Pennsylvania, in which event it must also be dismissed from this jurisdiction; or it is, third, a suit of the Adams Express Company, a corporation, against D. McM. Gregg, in

which event there can be no further contention that the plaintiff is not subject to the tax laws of Pennsylvania; or, fourth, it is a suit of Sanford et al., citizens of another state, against Gregg, a citizen of this state. If the relation of the parties is that stated in the fourth proposition, there is no occasion for equitable relief, for the settlement of the auditor general can have no binding force or validity. His threat is brutum fulmen. His settlement can have no finality, requires no appeal, can ensue in no judgment, can create no lien, and exacts no security. If it is not a mere controversy between individuals, which can be settled at law, then it is in effect and in law a suit against the state of Pennsylvania, and a proceeding to restrain that commonwealth, to shackle its arm.

The bill, as appears by the record, is against D. McM. Gregg, "auditor general of the state of Pennsylvania," and not against him as an individual. He is in no way interested in this case other than in his official capacity as auditor general of the state, and whatever he intended doing or did do was as such official, acting in an official capacity for the state. Under this head there is an abundance of authorities. This question is thoroughly discussed in the case In re Ayers, 8 Sup. Ct. Rep. 164, 123 U. S. 443, in which are cited: Georgia v. Braislford, 2 Dall. 402; Ex parte Madrazzo, 7 Pet. 627; Kentucky v. Dennison, 24 How. 66, 98; Cunningham v. Railroad Co., 3 Sup. Ct. Rep. 292, 609, 109 U. S. 416; Hagood v. Southern, 6 Sup. Ct. Rep. 608, 117 U. S. 52; Louisiana v. Jumel, and Elliott v. Wiltz, 2 Sup. Ct. Rep. 128, 107 U. S. 711; Board v. McComb, 92 U. S. 531; Kirtland v. Hotchkiss, 100 U. S. 491; New Hampshire v. State of Louisiana, and New York v. State of Louisiana, (decided in 1883,) 2 Sup. Ct. Rep. 176, 108 U. S. 76. See, also, De Saussure v. Gaillard, 8 Sup. Ct. Rep. 1053, 127 U. S. 216.

In a recent argument before the supreme court of the United States, (In re Tyler, 13 Sup. Ct. Rep. 785, 149 U. S. 164,) Mr. J. Randolph Tucker, an eminent constitutional lawyer and commentator, states the subject thus:

"Where an officer of the law does an act under valid and constitutional authority of the government of his state, in obedience to her order, and in pursuance of his sworn duty as her officer, the act is not his own; it is the act of the state by its own will and mind and hand, the hand and will and mind of its own officer. It has no other means of acting. If this, its only, means may be held responsible, then the state's immunity from liability is a fiction and a mockery. If those by whom alone the state can act may be punished or prevented, it is folly to say the state is not punished and prevented. To enjoin the officer through whom only she can act is to enjoin her; to sue these is to sue her. To forbid these to act, to put them in duress of imprisonment, to force them, is to act judicially on her. If these are deterred by such proceedings from acting, she is deterred from action; is a state maimed and helpless; a state only in name; a sovereign without will or capacity to act at all.

"This doctrine of identity of the state with its officers, as 'the head with its members,' is recognized as to her responsibility under fourteenth amendment, in the Virginia Cases, 100 U. S. 313, 370. If so, why not applicable to her immunity under the eleventh amendment?

"The United States cannot be sued, and hence its officers cannot be sued for their representative action. Mississippi v. Johnson, 4 Wall. 475; Georgia v. Stanton, 6 Wall. 50; Noble v. Railroad Co., 13 Sup. Ct. Rep. 271, 147 U. S. 165; New Orleans v. Paine, 13 Sup. Ct. Rep. 303, 147 U. S. 261."

"Where the officer of the state has no right to possession of or title to property, nor right or interest in action, which is separable from the state's right, title, and interest, then the officer in respect of such right, title, and interest is protected by the eleventh amendment from suit against him, because it is really against her.

"Especially is the foregoing true, when the officer is charged with discretion in his action, and is not merely ministerial; for his mind and will in discretionary action is her mind and will, and cannot by suit be constrained or forbidden. Court cannot substitute judicial or executive action of state officer. Board v. McComb, 92 U. S. 531; Cheatham v. U. S., Id. 85; State Railroad Tax Cases, Id. 575; Heine v. Levee Com'rs, 19 Wall. 660. In this case the action of the board of liquidation was judicial, and conclusive on

taxpayer, unless by resort to the tribunal created by the state for correction of the error." Stanley v. Supervisors, 7 Sup. Ct. Rep. 1234, 121 U. S. 535.

"An officer chargd with a sovereign function of a state cannot be punished by fine and imprisonment, or prevented by injunction from discharging it; nor can such officer holding by state authority any property be enjoined from so holding it, nor can it be taken from him by any court, because it is in fact a proceeding against the state; and decree so affects her that she should be a party, which she cannot be because of eleventh amendment. In all such cases officers have the state's immunity in order to secure her own."

And although in this South Carolina case the supreme court has recently denied the application for a writ of habeas corpus, it has done so expressly upon the ground that the seizure by the officers of the state of South Carolina for taxes of the property of a railroad in the hands of a receiver by force was unjustifiable, and could not be defended; that the claims of the state for taxes are not superior to the general rule which makes property placed in the hands of a receiver subject to the orders of the court. "They are to be determined in the regular way, and in the proper manner." That is precisely what is proposed to be done by the state of Pennsylvania in this case.

It is not the province of the federal courts to interfere with the policy of the revenue laws of the states. High, Inj. (3d Ed.) §§ 485, 486, p. 360; Id., § 491; Bank v. Billings, 4 Pet. 514; St. Louis v. Ferry Co., 11 Wall. 423; Kirtland v. Hotchkiss, 100 U. S. 491; Memphis Gas-Light Co. v. Taxing Dist. of Shelby Co., 3 Sup. Ct. Rep. 205, 109 U. S. 398; Haley v. Breeze, 12 Sup. Ct. Rep. 836, 144 U. S. 130; Dows v. City of Chicago, 11 Wall. 108; Walston v. Nevin, 9 Sup. Ct. Rep. 192, 128 U. S. 578; Shelton v. Platt, 11 Sup. Ct. Rep. 646, 139 U. S. 591; Allen v. Car Co., 11 Sup. Ct. Rep. 682, 139 U. S. 658; Express Co. v. Seibert, 12 Sup. Ct. Rep. 250, 142 U. S. 348; State Railroad Tax Cases, 92 U. S. 614, 615; Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 26 Fed. Rep. 11; Marye v. Parsons, 5 Sup. Ct. Rep. 932, 962, 114 U. S. 332–335; Henderson Bridge Co. v. Henderson City, 12 Sup. Ct. Rep. 114, 141 U. S. 688; Pennoyer v. McConnaughy, (1891,) 11 Sup. Ct. Rep. 699, 140 U. S. 17.

DALLAS, Circuit Judge. My consideration of this case has been greatly facilitated by the thorough and able arguments which have been presented by counsel; but it is not necessary to enter upon a discussion of the several questions to which they have been directed. A brief statement of the conclusions which have been reached will suffice to indicate, with reference to the stipulation filed, the grounds of the decision now to be made.

1. The Adams Express Company is not a corporation. Consequently—First, it is not subject to the tax in question; and, second, the defendant, in making the settlement against that company, did not act by authority of the state of Pennsylvania, and therefore this suit is not, in effect, against that state, but is one to which the judicial power of the United States extends.

2. It is undoubtedly true that the federal courts should be extremely cautious in interfering with the collection of the revenues of the several states; but this bill is not aimed at the collection of current revenue, but of back taxes covering a period of 20 years; and this settlement, if not itself a presently existing cloud upon title to real estate, is certainly a potential threat to create one, which is not effectually withdrawn by the allegation that this defendant does not propose to pursue it. In Jackson v. Cator, 5 Ves. 688, the Lord Chancellor (Loughborough) said: "I never ask more upon an application for an injunction than that a surveyor has been sent to mark out trees. I do not wait until they are cut down." This de-

fendant asserts a, right to create a lien, and has done all that is necessary to enable him, or his successor in office, to do so under color of the right asserted. This is sufficient ground for apprehending that the power (which unquestionably exists) to cloud the plaintiffs' title will be exercised; and the "naked and unsupported" promise of the defendant that he will, refrain from exercising that power does not defeat the right of the plaintiffs to have its exercise prohibited. Celluloid Manuf'g Co. v. Arlington Manuf'g Co., 34 Fed. Rep. 324. The first step towards the creation of a lien having been taken, the jurisdiction in equity then attached, and cannot now be divested by the averment of the defendant that he does not intend to proceed further in that direction; and if it be assumed that equity would interpose primarily only to prevent the perfection of the apprehended lien, yet, having acquired jurisdiction for that purpose, the court should not hesitate to strike at the root of the wrong by annulling the unlawful preliminary procedure by which the completed injury has been rendered possible. Therefore, and irrespective of the other grounds which have been urged with much force, I am of opinion that this suit is within the equitable jurisdiction of this court.

The complainants are entitled to relief in accordance with the stipulation filed, for which a decree may be prepared and, if requisite, be submitted for settlement.