MEYERS et al. v. SHIELDS, County Treasurer.

(Circuit Court, N. D. Ohio, E. D. June 2, 1894.)

1. FEDERAL COURTS—EQUITABLE REMEDIES UNDER STATE LAWS—RESTRAINING
COLLECTION OF TAX.
A remedy by injunction against the collection of an illegal tax, expressly
provided by a state statute, may be applied by federal court of equity in
the state, notwithstanding the statute also provides for an action at law
to recover back the tax when paid. Cummings v. Bank, 101 U. S. 153, followed.

2. SAME—LIEN FOR TAXES AS CLOUD ON TITLE.
A federal court of equity has jurisdiction to afford relief against the
illegal assessment of back taxes under a state statute making them a
lien on real estate, thereby throwing a cloud on the title thereto.

3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—NOTICE OF ASSESSMENT OF
TAX.
Proceedings by a county auditor under Rev. St. Ohio, § 2781, by which
an assessment for taxes of years preceding the current year is entered on
the general tax duplicate against the taxpayer without notice or opportunity to be heard, which assessment is a cloud on the title to his realty,
and a lien on his property enforceable by distraint and sale of goods without suit in court, deprive him of his property without due process of law,
and are invalid under Amend. Const. art. 14.

4. SAME—DISQUALIFICATION BY INTEREST.
Such proceedings by the auditor being judicial in their nature, his direct
pecuniary interest therein under Rev. St. Ohio, § 1071, which entitles him
to a commission of 4 per cent. on all taxes added by him to the duplicate
under section 2871, is a disqualification which makes the proceedings,
when conducted by him, not due process of law within Amend. Const. art.
14.

5. TAXATION—RESTRAINING COLLECTION—AMENDMENT OF BILL.
Failure of a bill for injunction against collection of a tax to aver that
plaintiffs have property within the distraining process authorized therefor may be supplied by amendment, after submission of the cause, where
the averments of the original bill were a sufficient basis for the temporary injunction allowed, and the facts are manifestly incontestable.

This is a bill in equity, filed by the complainants, who are nonresidents of Ohio, to enjoin the defendant, who is the treasurer of Cuyahoga county, Ohio, from attempting to enforce the collection of
$184,108.50, which sum, it is averred, stands illegally assessed against
said complainants on account of taxes alleged to have been unlawfully and fraudulently withheld from the tax duplicate of said county
by the deceased for the years 1887, 1888, 1889, 1890, 1891, and 1892.

The allegations of the bill are that the complainants are the duly-appointed
executors of John L. Woods, who died on March 27, 1893, as a resident and
taxpayer of Cuyahoga county, leaving a will appointing complainants as his
executors, both of whom are nonresidents of Ohio, and citizens of New York
and Michigan, and that the controversy involves and presents to the court a
question arising under the constitution of the United States. The bill further
avers that for each of the years 1887, 1888, 1889, 1890, 1891, and 1892 their
testator, John L. Woods, then being a resident of the city of Cleveland, did,
as complainants believe and aver the fact to be, duly list for taxation all
property owned by him and subject to taxation in the state of Ohio, and duly
paid all taxes legally assessed against him; and in no one of said years did
the said John L. Woods make a false return of his personal property for taxation, or conceal the same, or in any manner evade the payment of lawful
taxes upon his property. It is further alleged that after said Woods died
the auditor of Cuyahoga county, wrongfully claiming that for the years above
enumerated the deceased had made false returns of his personal property for

taxation, and claiming to act under authority of sections 2781 and 2782 of the Revised Statutes of Ohio, placed upon the tax duplicate, and certified for collection against said John L. Woods, to the defendant, Joseph C. Shields, treasurer, taxes and penalties as follows:

For the year 1887..................................... $600,000 00
For the year 1888.....................................  750,000 00
For the year 1889.....................................  750,000 00
For the year 1890.....................................  800,000 00
For the year 1891.....................................  680,000 00
For the year 1892.....................................  750,000 00

—And increased said sums, respectively, by the infliction of a penalty of 50 per cent. thereof, and multiplied the sums thus increased by said penalty by the rate of taxation for each year, making the amounts charged against said John L. Woods for taxes and penalties for said years as follows:

| 1887. | Principal | $ 900,000 00, | Tax | $25,470 00 |
|---|---|---|---|---|
| 1888. | " | 1,125,000 00, | " | 31,837 50 |
| 1889. | " | 1,125,000 00, | " | 31,837 50 |
| 1890. | " | 1,200,000 00, | " | 35,160 00 |
| 1891. | " | 1,020,000 00, | " | 28,866 00 |
| 1892. | " | 1,125,000 00, | " | 30,937 50 |

The bill further avers that said taxes and penalties now stand charged for collection, and upon the face of the duplicate appear as a debt against the estate of said Woods in the hands of complainants as executors, to be collected by action or distraint, and that defendant has begun an action against complainants in the court of common pleas for said county, but no service of process has yet been made upon them. The bill further avers that said auditor failed to give the notice provided for by sections 2781, 2782 of the Ohio Laws, which notice the taxpayer is entitled to have, to the end that he may show, under oath or otherwise, that he did not evade the payment of the taxes which the auditor proposes to charge against him; and the bill particularly charges that said auditor, in charging said illegal taxes against the said Woods, did so without any notice whatever to him in his lifetime, or to the complainants, saving a notice served upon the latter, in substance saying that the agents employed by the authority of the Statutes of Ohio to look up property omitted from taxation have discovered errors in the tax returns of John L. Woods, and notifying complainants, as his executors, to appear, and show cause why they should not be corrected, and the omission placed on the treasurer's duplicate for collection, which notice did not inform the complainants what kind of error had been made, nor for what year, nor that he claimed said return false and fraudulent, so as to subject the said Woods to the penalty for such false return; and, though the law authorizes the said auditor to add only such specific property to the duplicate as he ascertains to have been falsely withheld from taxation, and at the true value in money of each item of property which he so adds, complainants aver that they examined said auditor's records, and that it does not appear therein what property claimed to have belonged to said Woods was added to his tax return, or at what value the items which make up said tax were assessed; and complainants allege that said auditor did not find any specific property of said Woods omitted from his tax returns, but that, without such finding, and irrespective of its true value in money, said auditor arbitrarily, and without any authority of law, charged said taxes and penalty against said Woods, and complainants therefore cannot ascertain what property it is for which they are asked to pay said taxes and penalties, and upon what basis of valuation they were placed upon the duplicate.

Complainants further charge that the proceedings of said auditor under sections 2781 and 2782 of the Ohio Statutes, authorizing him, in the manner hereinbefore charged, to add to the tax return of the said John L. Woods the property as aforesaid, are void, because it is an attempt to take the property of said Woods without due process of law, because, under section 1071 of the Revised Statutes of Ohio, the auditor is entitled to a commission of 4 per cent. on all taxes added by him to the duplicate under sections 2781 and 2782, thereby giving him a direct pecuniary interest in the result of his determination of

the questions submitted to his judgment under said sections, thereby, in effect, holding out to him a direct bribe to decide such controversy against the citizen and in favor of the state; whereby said laws, in so far as they attempt to confer power upon said auditor to add to the tax returns of the citizen and inflict penalties therein specified, are in conflict with article 5 of the first amendment to the constitution of the United States and with the fourteenth amendment of the constitution of the United States, and with the constitution of Ohio. The complainants further charge that said taxes were illegally charged against said Woods, and do not in fact constitute a legal claim against his estate, because said finding and judgment were made after his death; and that said taxes are charged, upon the duplicate of said county, not against the estate of said Woods, but against him, whereby said auditor has attempted to enter a finding and judgment against said Woods after his death. To this bill the defendant has interposed his demurrer, on the ground that said bill does not state a case, nor contain any matter of equity entitling the complainants to any relief against the defendant.

Squire, Sanders & Dempsey, for complainants.

W. L. Avery and T. K. Dissette, Asst. Pros. Atty., for defendant.

Briefs of Boynton & Horr, Hoyt, Dustin & Kelley, and John H. Doyle, of Toledo, for plaintiffs in causes now pending, involving same questions, examined by court.

RICKS, District Judge (after stating the facts). The first contention necessary to consider is the objection by the defendant that this court, sitting as a court of equity, cannot acquire jurisdiction of this case because the plaintiffs have a complete and adequate remedy at law. Counsel have insisted upon this objection very strenuously, and urged that the remedy in equity afforded by the laws of the state of Ohio cannot be applied in this court, but that the limitation put upon the equitable jurisdiction of the federal courts by section 723 of the Revised Statutes of the United States must be considered an inhibition, at least to limiting this jurisdiction to administering in equity remedies under state statutes. But the decision of the supreme court of the United States in the case of Cummings v. Bank, 101 U. S. 153, is conclusive on this subject. The court had presented in that case the precise objection now urged, and in disposing of it with reference to the statutes of Ohio said:

"But the statute of the state expressly declares that suits may be brought to enjoin the illegal levy of taxes and assessments, or the collection of them; * * * and, though we have repeatedly decided in this court that the statute of a state cannot control the mode of procedure in equity cases in federal courts, nor deprive them of their separate equity jurisdiction, we have also held that, where the statute of a state created a new right, or provided a new remedy, the federal courts will enforce that right, either on the common law or equity side of its docket, as the nature of its new right or remedy requires. Here there can be no doubt that the remedy by injunction against an illegal tax expressly granted by the statute is to be enforced, and can only be appropriately enforced, on the equity side of the court. * * * The statute also answers another objection made to the relief sought in this suit, namely, that equity will not enjoin the collection of a tax except under some of the well-known heads of equity jurisdiction, among which is not a mere overvaluation, or the illegality of the tax, or in any case where there is an adequate remedy at law. The statute of Ohio expressly provides for an injunction against the collection of a tax illegally assessed, as well as for an action to recover back such tax when paid, showing clearly an intention to authorize both remedies in such cases."

In the case of Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, the supreme court held that the circuit court of the United States, sitting in Tennessee, could not entertain jurisdiction of such a suit in equity, because the laws of Tennessee specially provided a complete remedy at law to the taxpayer resisting the collection of an alleged illegal tax. That statute provides that, where an officer charged by law with the collection of revenue due the state takes any steps for the collection of the same, a party conceiving the tax to be unjust or illegal may pay it under protest, and sue the officer to recover the money; and, if the court determines that it was wrongfully collected, then, upon its certificate to that effect, the comptroller "shall issue his warrant for the same, which shall be paid in preference to other claims on the treasury." And the act further provides that there shall be no other remedy in any case for the collection of revenue, and no writ for the prevention of such collection, or to hinder or delay it, shall in any wise issue,—either injunction, supersedeas, prohibition, or any other writ or process whatever. With such a complete and exclusive remedy at law prescribed by the state statute, a federal court of equity in Tennessee would not afford equitable relief by injunction. It would be difficult to frame a bill which would confer jurisdiction in equity, in view of that statute, and of section 723, Rev. St. U. S. But the legislative authority in Ohio has adopted an exactly contrary policy. Section 5847, Rev. St. Ohio, expressly provides the remedy by injunction to protect the taxpayer against the payment of an illegal tax. The remedy prescribed is equitable in its nature. A federal equity court, sitting in Ohio, would therefore afford the equitable relief by injunction, when the same court, sitting in Tennessee, would refuse it, and remand the plaintiff to his remedy at law. Federal courts decline, except in extreme cases, to interfere with the enforcement of the revenue laws of a state, because it embarrasses the operations of the local government, and deals directly with the most delicate and important powers of the state's sovereignty. It is only where a clear case for the interposition of the equity powers of the court is presented that it will exercise them. In Ohio the laws invite and prescribe such relief by injunction for nonresidents as well as for residents. In Tennessee the law distinctly excludes that remedy. The cases of Cummings v. Bank and of Shelton v. Platt are therefore easily reconciled and applied. The former interprets the Ohio statute as conferring a new equitable right and remedy which the federal courts will enforce. For these reasons it seems to me clear that this court has jurisdiction in this case to afford plaintiffs such relief in equity as they may be entitled to invoke under the averments of the bill. But there is still another principle upon which the court could acquire jurisdiction. The bill avers that the taxes assessed against the plaintiffs by the laws of Ohio become a lien upon their testator's property, and throw a cloud upon their title to the real property belonging to the estate. In the case of Sanford v. Gregg, 58 Fed. 620, which was a suit brought to enjoin a state officer from assessing or enforcing a tax for which it was claimed there was no warrant in law, the court says:

"While the federal courts are extremely cautious about interfering with the collection of current state revenues, yet they will not decline to enjoin a settlement of illegal back taxes which threatens to create a cloud on the real estate. \* \* \* A settlement of alleged illegal back taxes, which, when the proper steps are taken, will constitute a lien on the real estate, constitutes such a threat to create a cloud on the title as will authorize the interference of equity; and an allegation by taxing officers that they do not intend to take the steps necessary to create the lien does not oust the jurisdiction."

The case is elaborately argued by distinguished counsel, and in a very brief opinion delivered by Judge Dallas is disposed of, so far as pertinent to this discussion, by the statement that the bill—

"Is not aimed at the collection of current revenue, but of back taxes covering a period of twenty years; and this settlement, if not itself a presently existing cloud upon title to real estate, is certainly a potential threat to create one, which is not effectually withdrawn by the allegation that this defendant does not propose to pursue it. In Jackson v. Cator, 5 Ves. 688, the Lord Chancellor (Loughborough) said: 'I never ask more upon an application for an injunction than that a surveyor has been sent to mark out trees. I do not wait until they are cut down.' \* \* \* The first step towards the creation of a lien having been taken, the jurisdiction in equity then attached, and cannot now be divested by the averment of the defendant that he does not intend to proceed further in that direction. \* \* \* Therefore, and irrespective of the other grounds which have been urged with much force, I am of opinion that this suit is within the equitable jurisdiction of this court."

The next question to be determined is whether the proceedings by which the auditor assesses the tax and certifies the amended duplicate to the treasurer, and thereby makes it a lien upon the taxpayers' property, are "due process of law," within the meaning of the fourteenth amendment to the constitution of the United States. And in the consideration of this question it becomes important to ascertain whether, under the Ohio Statutes, and the mode in which they are enforced by the auditor and treasurer, the taxpayer has such notice of the proceedings as is necessary to make them due process of law. And, first, what is "due process of law?" In Murray's Lessees v. Hoboken Land & Imp. Co., 18 How. 272, Mr. Justice Curtis says: "The words 'due process of law' were undoubtedly intended to convey the same meaning as the words 'by the law of the land' in Magna Charta." Lord Coke, in his commentary on these words (2 Inst. 50), says they mean due process of law. The constitutions which had been adopted by the several states before the formation of the federal constitution, following the language of the great charter more closely, generally contained the words, "but by the judgment of his peers, or the law of the land." The ordinance of congress of July 13, 1787, for the government of the territory of the United States northwest of the River Ohio, used the same words. The constitution contains no description of these processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process. It is manifest that it was not left to the legislative power to enact any process which might be devised. "The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave congress free to make any process 'due process of law' by its mere will."

In Zeigler v. Railroad Co., 58 Ala. 599, the supreme court says:

"Due process of law implies the right of a person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property in its most comprehensive sense, to be heard, by testimony or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right involved in the matter."

Daniel Webster, in his argument in the Dartmouth College Case, said the "law of the land" was substantially equivalent to "due process of law," and defined the former as follows:

"By the 'law of the land' is meant the 'general law,' which hears before it condemns; which proceeds upon inquiry, and renders judgment only on trial."

Adopting Mr. Webster's definition, the supreme court of Missouri, in Clark v. Mitchell, 64 Mo. 578, say:

"It is entirely correct in assuming that a legislative enactment is not necessarily the law of the land. The words 'by the law of the land,' as used in the constitution, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense."

Mr. Justice Miller, in Davidson v. New Orleans, 96 U. S. 104, in considering the meaning of these words, says:

"It is probably better to leave the meaning to be evolved by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning upon which such decisions may be founded."

In the same case, Mr. Justice Bradley adds these words:

"In judging what is due process of law, respect must be had to the cause and object of the taking,—whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law,' but, if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.'"

One principle runs through all these definitions. Webster expresses it tersely when he says: "By the 'law of the land' is meant the 'general law,' which hears before it condemns; which proceeds upon inquiry, and renders judgment only on trial." The party to be affected by the process which deprives him of his life, liberty, or property, must have notice of the time and place of hearing, in some form and at some time, and must have the privilege of being heard. He must have his day in court. Do the laws of Ohio governing the proceedings under consideration provide for such notice? It is evident that the auditor's proceedings complained of in this bill were instituted and carried forward by him under the assumption that sections 2781 and 2782 of the Revised Statutes of Ohio afforded him authority for the findings and the entry made on the tax duplicate. But a careful examination as to the origin, changes, and final enactment of these two sections as part of the Revised Statutes of the state clearly show that each has a separate history, that each was framed by the legislature for a different purpose, and each covers and applies to different violations of the tax laws. In the case of Ratterman v. Ingalls, 48 Ohio St. 468, 28 N. E. 168, the supreme court of Ohio clearly define the distinction between the two sections. Section 2781 was originally passed as section 1 of the

act of March, 1861, 58 Ohio Laws, p. 47.   It was an amendment of
section 6 of the act of April 5, 1859.   As then enacted, it provided
as follows:

"Section 1. Be it enacted by the general assembly of Ohio, that if any per-
son, whose duty it shall be to make a return or list of property for taxation
under the provisions of the act 'for the assessment and taxation of all prop-
erty in this state and for levying taxes thereon according to its true value
in money,' passed April 5, 1859, shall make a false return, or shall evade
making a return, it shall be the duty of the county auditor to ascertain the
true amount of the taxable property, moneys, credits and effects that such
person ought to have returned or listed, in the manner prescribed in the
thirty-fourth section of said act, and to add thereto fifty per centum on the
amount so ascertained; and the amount so ascertained, with the said fifty
per centum, shall be entered on the duplicate for taxation."

When this act was revised and became part of the Revised Stat-
utes, that provision was repealed and omitted which required the
auditor to ascertain the true amount of property, moneys, etc., that
such person ought to have returned or listed, "in the manner pre-
scribed in the thirty-fourth section of said act."   The thirty-fourth
section of that act provided that in all such proceedings the auditor
might issue compulsory process for the attendance of witnesses,
and then specifically provided that "it shall be the duty of the au-
ditor in all such cases to notify every such person before making the
entry on the duplicate, that he may have an opportunity of show-
ing that his statement   *   *   *   was correct."   By this repeal of
this clause of the original statute section 2781 became a part of the
Revised Statutes of the state without any provision requiring a no-
tice from the auditor to the taxpayer of the nature of the proceed-
ings before the former under that section, and of the character or
scope of the "entry on the tax duplicate," in which those proceed-
ings might result.   In 1886 this section was amended so as to add
a penalty of 50 per centum to the amount of taxes found to have
been falsely withheld in the taxpayer's return for each of the five
years next preceding, and multiply the sum or sums thus increased
by the said penalty by the rate of taxation belonging to said year
or years, and accordingly enter the same on the tax lists in his office,
giving a certificate therefor to the county treasurer, who shall col-
lect the same as other taxes.   The statute, thus made more sweep-
ing in its provisions, was still silent as to any notice to the taxpayer
of the proceedings that might be going against him in the audi-
tor's office.   Section 2782 is a re-enactment of section 34 of the act
of April 5, 1859, without any material change.   It is evident from
this brief history of the two sections that it was originally the legis-
lative policy of the state to provide for a notice to the taxpayer of
the nature of the proceedings in the auditor's office under both of
these sections.   But the bill in this case sets forth the notice given.
That notice covered only the proceedings provided for by section
2782.   It certainly cannot be seriously contended that under a notice
from the auditor of an intention to ascertain whether the taxpayer
has given to the assessor "a false statement of the personal prop-
erty," etc., for the current year, such officer could proceed with-
out other or further notice to find under section 2781 that such tax-
payer had made a false return for five years, and also "ascertain

as near as practicable the true amount of personal property," etc., "that such person ought to have returned or listed; and to the amount so ascertained for each year he shall add fifty per centum, and enter the same in the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes." In Scott v. City of Toledo, 36 Fed. 385, Judge Jackson held "that the notice required by section 2304, Revised Statutes of Ohio, of the adoption of the preliminary resolutions declaring the necessity of opening a street and appropriating lands, having no reference to any assessment to defray the expenses thereof, is not sufficient to make a subsequent assessment without further notice valid." But it is said the supreme court of the United States, in the case of Sturges v. Carter, 114 U. S. 511, 5 Sup. Ct. 1014, held a notice given under section 2782 was sufficient to support a finding under section 2781. But an examination of that case shows that the auditor served a written notice on Sturges to appear instanter, and give information of all property within his knowledge which had not been duly returned for taxation. He appeared and submitted to an examination, and while in attendance was informed by the auditor that he had not reported for taxation certain judgments and mortgages, called his attention to the statute under which he was proceeding, and requested such explanation as he might choose to offer; and the auditor then further informed him that he would file a supplemental assessment against him of the property which he. had not included in his return for the preceding four years. He then made such supplemental assessment, taxing the defendant upon $100,000 of stock of the Western Union Telegraph Company for the years 1874, 1875, 1876, and 1877, and entered the same upon a supplemental tax duplicate, and certified the same to the treasurer for collection. The treasurer brought a civil action on this assessment for $10,776.83, in the common pleas court of Richland county, and it was removed to this court. Judgment was entered here against the defendant Sturges. The supreme court decided that, inasmuch as Sturges appeared, testified, and was then notified by the auditor of what he proposed to report and find for taxes due the preceding years, Sturges had his day in court, and was notified, within the meaning of the Ohio Laws. The errors to be corrected and the remedy to be applied under section 2782 relate only to the current year. This is accomplished by the auditor filing in his office "a statement of the facts or evidence upon which he makes such correction." But under section 2781 the proceedings may result in adding to the tax duplicate, and making it a lien upon the taxpayer's property, the tax on the true amount of property such person should have returned for the preceding five years, with the penalty of 50 per cent. The notice provided by section 2782 could not, therefore, be held to relate to or cover the proceedings under section 2781. This latter section does not provide a notice. We have seen that, as originally enacted, it did provide for notice the same as section 2782; but in the revision of the laws that notice was omitted. The proceedings, then, under section 2781, by which the plaintiffs were charged with this sum of $184,108.50, were carried forward

without notice to them. The evidence which the auditor heard was given ex parte. The bill avers that he made no findings of fact, but arbitrarily entered a gross sum on the tax lists of his office, giving a certificate therefor to the county treasurer, to be collected as other taxes.

But it is contended that it is not necessary to give the taxpayer notice of the proceedings in the auditor's office, or of the finding made and certificate returned to the treasurer by the auditor, because such proceedings are merely preliminary, and the collection of the tax so imposed cannot be enforced except by suit in court, and of such suit the taxpayer has notice, and all rights to contest the legality of the tax assessed are open to him as a defense in such suit. If this contention is true, the taxpayer would not be deprived of his property without due process of law, for the opportunity to contest the tax, and defend against its legality in the suit brought to enforce payment (with no other remedies to be applied), would give him his "day in court." Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663. It therefore becomes important to determine whether the contention of defendant's counsel is true. In the case of Scott v. City of Toledo (before cited), Judge Jackson found that the assessment made upon Scott by the city council for the opening and improvement of the street on which his property abutted was made without legal notice to him, and was therefore "wanting in 'due process of law' if its collection could be enforced otherwise than by suit or legal proceedings in which all defenses to its validity or amount could be raised." He then proceeded to examine the Ohio laws under which such an assessment could be enforced, and found that they were collected the same as state and county taxes, and under section 2295 of the Revised Statutes they could be collected either by suit, by forfeiture and sale of the land, or by distraint of sufficient goods and chattels belonging to the person charged with such taxes or assessments; and, though he found that two other modes for collection by suit were provided, in either of which the taxpayer would have notice, yet, because the corporation might select the method of collecting by distraint of goods and chattels, by which the taxpayer would be deprived of any opportunity to be heard in regard to the assessment, either as to its validity or amount, the requirement of "due process of law" would be violated. The learned judge therefore concluded as follows:

"The common council of Toledo, having made the assessment in question without notice to, or an opportunity for hearing by, complainants, and having the right to enforce its collection by distraining and selling their property without resorting to any suit which would give them an opportunity to interpose any defense either to the validity or amount of said assessment, its action in the premises, even if authorized by the Statutes of Ohio, is wanting in that 'due process of law' required by the federal constitution before depriving the citizen of his property."

The principle so announced is fully supported by the decision of the supreme court in the case of Hagar v. Reclamation Dist., before cited. It is not in conflict with Kentucky Railroad Tax Cases,

115 U. S. 321, 6 Sup. Ct. 57. In that case, under a Kentucky statute, taxes were assessed against certain railroads by a state board, after notice and hearing to the railroads. They complained that the board did not give them a hearing as the law contemplated, and that the tax was illegally imposed, and deprived them of their property without due process of law. The supreme court held:

"The valuation of railroad property under the act, and the assessment of taxes thereon, are not final, in the sense that they constitute a charge on the property subject to the tax, or a liability fixed upon the corporation owning it. That result can be attained, and the tax actually collected, only by suit, * * * either for penalties incurred, * * * or for the recovery of the taxes themselves."

Scott v. City of Toledo is not in conflict with Davidson v. New Orleans, heretofore cited. In 1871 the petition of the city of New Orleans, and the administrators thereof, was filed in the seventh district court for the parish of Orleans, setting forth an assessment on certain real estate, made under the statutes of Louisiana, for draining the swamp lands within the parishes of Carroll and Orleans, and asking that the assessment should be homologated by the judgment of the court. The estate of John Davidson objected. The objection was sustained by the district court. The supreme court reversed that action, and approved the assessment roll, and that it should operate as a judgment against the property described. A writ of error was sued out to the supreme court of the United States. That court held:

"That whenever, by the laws of a state, * * * a tax assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. * * * This proposition covers the present case. Before the assessment could be collected or become effectual, the statute required that the tableau of assessments should be filed in the proper district court of the state; that personal service of notice, with reasonable time to object * * *. This was complied with, and the plaintiff had a fair hearing in the court of first instance. If this be not due process of law, then the words can have no definite meaning, as used in the constitution."

In both these cases, it must be observed, the tax imposed did not become a lien, or was not enforceable by distraint against the taxpayer, until suit was brought on the assessment, and a judgment of the court entered thereon. No such protection is afforded by the Ohio statute. It is doubtful whether, in a suit to enforce collection of the assessment in Ohio, the defendant would not be bound by the facts found by the auditor. The certificate sent to the treasurer is made prima facie correct. But the proceedings before the auditor complained of in this case are even more obnoxious than the proceedings against Scott reviewed by Judge Jackson in the case cited. It is not a satisfactory or sufficient answer to the objections urged against the arbitrary action of the auditor to say that his proceedings are only preliminary, and that in a suit brought to enforce

the collection of such taxes the taxpayer has his notice and his opportunity for presenting his defense. The proceeding is not of this innocent character. The statute vests in the auditor the power to proceed in a quasi judicial character. He summons the parties accused and witnesses, he administers oaths, hears the testimony, and then proceeds to a finding, which has far more vitality and efficiency than the judgment of a court, because more summary remedies are provided for enforcing the collection of the assessment which he makes. Without stating the facts upon which his conclusion is based, or the reasons which lead him thereto, he adds to the tax duplicate an assessment, according to the averments of the bill in this case, of $184,108.50. He certifies this supplemental duplicate to the treasurer, and it thereby becomes a lien upon the taxpayer's property, and a blot upon his character and reputation as a truthful and law-abiding citizen. Upon this certificate the treasurer may collect this assessment by distraint, and by those summary and arbitrary proceedings which have been properly upheld as agencies and means necessary to enforce the collection of taxes legally and justly imposed. This assessment and certificate, the result of the proceedings before the auditor, are therefore made more harmful to the defendant than the judgment of a court. Where the duplicate is regular upon its face, and the law is valid under which the taxes are assessed, the duplicate affords the treasurer the same protection as an execution does the sheriff against any liability for such seizure, even if the tax is improperly charged upon property not liable, or against a person having no property legally subject to taxation. Loomis v. Spencer, 1 Ohio St. 153; Stone v. Viele, 38 Ohio St. 317. Under section 1095 the treasurer may distrain sufficient goods and chattels belonging to the taxpayer charged with such taxes, and "shall immediately proceed to advertise the same, and sell the goods so distrained at public vendue, to pay said taxes and the costs of such distraint and sale." Under this section the supreme court of Ohio, in Stone v. Viele, has held that the treasurer may collect assessments by distraint, or sell lands upon which assessments have been levied, the duplicate having the force of an execution. If the treasurer fails to distrain goods, he may, under section 1097, apply to the clerk of the court of common pleas in his county, and said clerk shall cause notice to be given to the taxpayer, requiring him forthwith to show cause why he should not pay such taxes; and, if he fail to show a sufficient cause, the court, at the term to which said notice is returnable, shall enter a rule against him for the payment of such taxes and the costs of such proceeding, which rule shall have the same force and effect as a judgment at law, and be enforced by attachment or execution or such process as the court directs. Under section 1102 the treasurer may reach by distress, garnishee, or attachment any "dues" or credits of the delinquent taxpayer, if he has not sufficient property subject to distraint; or he may serve upon any person indebted to such taxpayer a written notice stating the amount of delinquent tax and penalty due. Then such

debtor may, after the service of such notice, pay such tax and penalty to the treasurer, whose receipt for the same shall be a full discharge of so much of said indebtedness as is equal to such tax and penalty. Under section 2859, in addition to all other remedies already noted, the treasurer may sue for these taxes, and in such suit he need only allege that the taxes are charged on the duplicate, and that duplicate is prima facie evidence of the amount and validity of the tax thereon charged. We have thus, as the result of the auditor's proceedings under section 2781, an assessment entered on the tax duplicate for taxes for five preceding years, with 50 per cent. penalty, which is a lien upon the taxpayer's real property, for the payment of which the treasurer may summarily distrain and sell at once, in any one of the several methods noted, his personal effects. It stands as a charge upon his property, a cloud upon the title to his real estate, a blot upon his character as a citizen, and yet it is claimed it is "due process of law," because if it is sought to enforce collection of such taxes by a suit in court the taxpayer will have notice of such proceedings, and may then defend against the prima facie case of guilt and indebtedness arbitrarily found against him. All the other summary remedies for collection provided by law are open to the treasurer, and may at any time be enforced; and, unless the taxpayer assumes the burden of removing the cloud upon his title and the lien upon his property by affirmative action, they stand as a menace to his credit and right of possession of his property, and as "due process of law" because of his right to notice and defense, provided the treasurer chooses to resort to the remedy of a suit in court. This is not the right to appear and make defense at the time when it is most valuable and efficient. It is a right to defend after judgment and conviction. Judge Blatchford, in Re Dana, 7 Ben. 1, Fed. Cas. No. 3,554, in commenting upon laws which gave a defendant the right of a trial by a jury in the appellate court, said:

"In my judgment, the accused is entitled not to be first convicted by a court and then to be acquitted by a jury, but to be convicted or acquitted in the first instance by a jury."

By the same principle I conclude that it is not "due process of law" to enter on the tax duplicate, without notice or trial, what amounts in legal effect to a judgment against the taxpayer, enforceable by distraint and sale of his goods and chattels, and afterwards make it "due process," because it may become possible for the taxpayer to interpose a defense, provided the collecting officer elects to bring a suit to enforce the collection when the more summary remedies have proven unavailing. This same principle is admirably stated by Mr. Justice Field in the Railroad Tax Cases, 13 Fed. 752, when he says:

"But whatever the character of the proceedings, whether judicial or administrative, summary or protracted, and whether it takes property directly or creates a charge or liability which may be the basis of taking it, the law directing the proceeding must provide for some kind of notice, and offer to the owner an opportunity to be heard, or the proceeding will want the essential ingredient of due process of law. Nothing is more clearly established,

by a weight of authority absolutely overwhelming, than that notice and opportunity to be heard are indispensable to the validity of the proceeding. It has sometimes been intimated that a citizen is not deprived of his property, within the meaning of this constitutional provision, by the imposition of an assessment. It might as well be said that he is not deprived of his property by a judgment entered against him. A judgment does not take property until it is enforced, and then it takes the real or personal property of the debtor. So an assessment may generally be enforced, not only against the real estate upon which it is a lien, but, as in this case, against the personal property of the owner also; and by it he may just as much be deprived of his property, and in the same sense, as the judgment debtor is deprived of his by the judgment."

For these reasons I conclude that the auditor's proceedings under section 2781 of the Ohio Statutes, by which an assessment is entered on the general tax duplicate against the taxpayer without notice or opportunity to be heard, and which assessment is a cloud upon the title to his realty, and a lien upon his property, enforceable by distraint and sale of goods and chattels without suit in court, are not "due process of law" under the fourteenth amendment of the constitution of the United States.

The next important question to be determined is whether the auditor is disqualified to make a valid assessment as the conclusion of the proceedings before him because of his direct pecuniary interest in the result. If he makes a finding against the taxpayer, and enters an assessment upon the tax duplicate, the statute gives him 4 per cent. upon the amount so recovered. If he fails to discover any property omitted from the taxpayer's return, he receives no compensation for his services. Because of this direct reward if he finds against the taxpayer, and of no reward if he finds in his favor, is he disqualified, and are the proceedings therefore invalid? The object of all legislation pertaining to judicial or quasi judicial proceedings is to furnish an impartial and wholly disinterested tribunal, before which such proceedings are instituted and carried forward. It is to carry out the constitutional guaranty that no man shall be deprived of life, liberty, or property without due process of law that the chief safeguard of a disinterested judge, jury, referee, or arbitrator is so carefully provided by legislation and protected by judicial scrutiny. The most notorious criminal enjoys these safeguards to the extent that the magistrate who presides at his preliminary hearing must be disinterested. Every grand juror who sits in the grand inquest as to his crimes must be disinterested; every petit juror who tries the facts after the grand jury presents its indictment must be disinterested; the judge who presides at the trial,—each and all must be wholly impartial and disinterested in the result. Even after conviction, if it is made to appear that by some mistake an interested or disqualified juror has participated in the trial and verdict reached, such interest and bias on the juror's part contaminates the whole proceeding, poisons the fountains of justice at their source, and makes the verdict null and void. Even in a civil suit, our system of judicial proceedings assures to each party a fair and disinterested judge and jury to pass upon the law and facts in controversy between them. Is it to be accepted

that all these safeguards are to be disregarded, and all the prece-. dents of long years set aside to support proceedings of the character we have considered, simply because the legislature has deemed it necessary to do so in aid of the tax assessing and collecting powers of the state? It must be remembered in this connection that this inhibition of the federal constitution that the life, liberty, and. property of the citizen shall not be taken without due process of law, reaches the legislative as well as the executive and judicial departments. We have already seen from well-considered decisions of our highest court that the legislative authority cannot usurp the power to determine what is due process of law, and on the plea of public necessity ignore the well-established safeguards which the law of the land has heretofore recognized and enforced. 64 Mo. 578. The taxing power is rightfully made efficient and protected with great jealousy, for it is necessary to the very life and maintenance of the sovereign, and very summary and sweeping enactments in support of this power have been held valid. But in the eager and hot pursuit of the citizen who wrongfully evades his just taxes we must be careful not to graft upon the body of our judicial system proceedings so arbitrary and summary that they may hereafter be the basis and precedent for laws dangerous in the highest degree to the personal liberty and property rights of every citizen. A statute which confers upon an officer, chosen solely with reference to other duties, the power to conduct a quasi judicial proceeding, which in every stage of its progress is summary, and in its findings arbitrary in the highest degree, and which makes this officer, combining the functions of judge and jury, partial and biased, because directly interested by reason of the very liberal reward which flows to him if he decides against the taxpayer, is a gigantic and perilous stride towards withdrawing from the citizen every principle of constitutional protection heretofore deemed secure and perpetual. It is not a sufficient answer to all this to say that the courts have upheld laws which are administered by officers and judges who are interested in the fees which flow from proceedings instituted and conducted before them. In reply to this very serious and grave objection to such an interested officer deciding a case of a judicial nature, the supreme court of Ohio has said that a justice of the peace and a probate judge are likewise interested, because the security of their fees as taxed by law may depend upon the result of the suit which they are to decide. The comparison, while in some respects apt, loses all force when we come to consider it in detail. The magistrate or probate judge has the same fees taxed for his compensation whether one party prevails or the other, or whether the judgment is for a small sum or a large sum. His fee is secure if the parties are solvent, or he may protect himself by demanding security before the services are rendered. So that his compensation, which is usually but a small part of the judgment rendered, is assured if he is diligent; and its amount is not contingent upon the decision he makes. The case is therefore exceptional when the security of his compensation depends upon the party against whom his judgment is rendered. But, as we have seen, the auditor's compensation is

directly dependent upon the finding he makes. If he finds against the taxpayer, he is sure of his reward, and it is secured by the highest lien, and most summary process for its collection. Not only is he interested in finding against the taxpayer, but his fee grows with the increasing amount of his assessment. The larger the assessment, the greater his commission. · In the case now before me, if the auditor's assessment stands, his fee will be $7,360. The fee is evidently not intended to be given in the nature of compensation for services alone. It is therefore not only in the nature of a bribe to decide against the citizen, but a corrupting inducement to make his finding the largest possible. As the proceedings are arbitrary, and in the case under consideration no finding of fact was made, the temptation to a large assessment is so great that it would be wrong to submit the ordinary mortal to it. Not only is the auditor thus given a tempting inducement to make a large and unjust assessment, but the statute offers still further inducements to bring about the same result by giving a large fee to the witnesses who furnish evidence against the evading taxpayer. Under the act of April 10, 1888, the inquisitors employed to furnish evidence receive 20 per cent. of all that can be recovered; but this reward can only be paid out of the money actually collected. Thus we have a system, judicial in its character, which rewards not only the witnesses by a commission upon the amount of taxes recovered by reason of their testimony, but also provides a commission of 4 per cent. to the officer who conducts the proceedings, and who awards the amount of the taxes to be assessed and collected. And so connected are these agencies that it has been held that mandamus proceedings can be maintained by the inquisitors to compel the auditor to act under sections 2781, 2782. State v. Crites, 48 Ohio St. 142, 26 N. E. 1052.

But it is contended the auditor is not eo nomine a judge, and the proceedings are not judicial, and therefore the assessment made by him is not invalid because of his pecuniary interest in the judgment rendered. It is true that he is not designated as a judge, but the supreme court of Ohio has repeatedly held that the proceedings conducted by him are judicial in their nature. Gager v. Prout, 48 Ohio St. 110, 26 N. E. 1013, and State v. Crites, 48 Ohio St. 460, 28 N. E. 178.

In the first case cited the supreme court said:

"Conceding that the proceedings before the auditor are judicial in character, it does not follow, as we think, that they are to be governed by all the precise rules of the Code of Civil Procedure for the commencement and prosecution of civil actions. Notice is required, but no particular style for the proceeding or form of notice is required."

In the case against Crites, on page 173, 48 Ohio St., and page 1052, 26 N. E., the supreme court said:

"No doubt the duty is one of delicacy, and calls for the exercise of a conservative judgment and sound discretion. The great power vested in county auditors by the statute is liable to cause hardship and oppression if exercised recklessly and wantonly."

In the second case against Crites, on page 465, 48 Ohio St., and page 178, 28 N. E., the same court, in referring to the auditor's proceedings, said:

"The respondent was acting in a quasi judicial capacity. He had assumed jurisdiction, and entered upon the investigation. The law imposed upon him the duty of hearing and weighing evidence, and rendering a decision upon it. This necessarily involved the exercise of judicial discretion."

An officer called upon to summon witnesses, hear testimony, and then "exercise a conservative judgment and sound discretion," and, as in this case, enter upon the tax duplicate an assessment for over $184,000, which shall be a lien upon the taxpayer's real estate, and which may be summarily collected by distraint, it seems to me, is exercising powers of a judicial nature, and of the most potential character. If the auditor were merely finding a tax due, the amount of which is fixed by statute, as the Dow law tax, or a license fee, involving no judicial function, the want of notice would not avail the taxpayer as a matter of defense; neither would the officer's interest in the fee disqualify him. Having thus shown the judicial character of the duties which the auditor performs in the proceedings which have just been reviewed, how does the law say his direct pecuniary interest in the judgment he renders affects the validity of his proceedings? In Pearce v. Atwood, 13 Mass. 324, Chief Justice Parker said:

"It is very certain that by the principles of natural justice and of the common law no man can lawfully sit as a judge in a case in which he may have a pecuniary interest. Any interest, however small, has been held to render a judge incompetent."

Lord Campbell said, in Dimes v. Grand Junction Canal, 3 H. L. Cas. 759:

"It is of the last importance that the maxim that no man is to be a judge in his own case should be held sacred, and that it is not to be confined to a cause in which he is a party, but applies to any cause in which he has an interest. We have again and again set aside proceedings because an individual who had an interest took part in the decision."

If one of the judges of a court is disqualified on this ground, the judgment will be void, even though the proper number may have concurred without the disqualified judge. Queen v. Justices of Hertfordshire, 6 Q. B. 753; Railroad Co. v. Howard, 20 Mich. 18. The legislative voice has spoken in equally positive inhibitions against interested persons acting as judges, appraisers, road viewers, or commissioners. In Ohio, statutory provisions are in force allowing a change of venue of the suit upon the mere affidavit of the parties of prejudice, bias, or interest. Section 550, Rev. St., makes any judge interested or biased incompetent to sit in the case, and the ex parte affidavit of a party makes a change of judges obligatory without controversy. In Gregory v. Railroad Co., 4 Ohio St. 675, it was held that where two of the judges were stockholders in a railroad company, and that fact appears on the record, and the bondholder does not waive the objection, the order of the court appointing appraisers in appropriation proceedings will be reversed. In Taylor v. Commissioners, 105 Mass. 225, the supreme court held that a county commissioner is disqualified by personal interest to take part in adjudications of his board laying out and directing the construction of a highway over land of his sister's husband, and such proceeding cannot be rendered valid

by acceptance, waiver, consent, or release, but **is wholly void.**
Cooley, Const. Lim. 410, 411, thus states the rule:

"No one ought to be a judge in his own cause. This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not. All his powers are subject to this absolute limitation, and, when his own rights are in question, he has no authority to determine the case."

It is no sufficient answer to these statutory and judicial expositions of the maxims of the law to say that in most of the cases cited the legislature has recognized the disqualification of the judges, appraisers, assessors, and commissioners, because of their interest, and provided they should not act when so interested; but in the case of the auditors it has empowered them to act notwithstanding their interest, and this policy was necessary to make efficient the revenue laws of the state. But it is not within the power of the legislature to make any process which it may deem necessary or essential, even for the collection of public revenues, "due process of law," within the meaning of the federal constitution. 18 How. 276. The supreme court of Missouri, in the case before cited, says such a "construction would render the restriction absolutely nugatory, and turn this part of the constitution into mere nonsense." I am aware that the courts have gone as far as the safeguards of the constitution permit to uphold legislative enactments of an arbitrary character, for the assessment and collection of the public taxes. The many ways that have been devised to evade and defeat the collection of taxes has made it necessary to resort to extreme measures to enforce their collection; but in all the cases which I have found there is this principle recognized and respected: that where there is the exercise of any judicial functions imposed upon any of the taxing corps of officials, those judicial functions must be exercised in accordance with those sound maxims of the common law and principles of natural justice which have always controlled judicial proceedings; and the test of whether the powers conferred are judicial or not would seem to be whether with the exercise of the authority to hear testimony and determine the facts was coupled the power to enter a finding which had the force and effect of the judgment of a court. Thus, in the case of U. S. v. Ferreira, 13 How. 40, it became necessary to determine whether the authority conferred upon the United States district judge in Florida to adjudicate on claims for injuries suffered by inhabitants of that state by the operations of the American army in Florida, which claims were to be paid if the secretary of the treasury should, on a report of the evidence, deem it equitable, was authority to exercise judicial power. The claims were to be adjudicated and paid if allowed in accordance with the treaty of 1819 with Spain. The first act of congress in 1823 provided commissioners to hear and adjudicate the claims. The next act authorized the United States district judge to adjudicate the claims. He did so, and from his decision an appeal was taken to the supreme court. That court held that, as the act did not pro-

vide that there should be a suit, with parties, and process to issue, the proceedings were ex parte.    The court then say:

"But neither the evidence nor his award are to be filed in the court in which he presides, nor recorded there, but he is required to transmit both the decision and evidence upon which he acted to the secretary of the treasury; and the claim is to be paid if the secretary thinks it just and equitable, but not otherwise.    It is to be a debt from the United States upon the decision of the secretary; but not upon that of the judge.    It is too evident for argument upon the subject that such a tribunal is not a judicial one. * * * The decision is not the judgment of a court of justice."

Apply these tests to the auditor's proceedings.    He has the power to issue process; he has parties to the proceeding; he makes a finding, and files his statement of the facts in his office; and then he makes his decision, which is an assessment framed into an amended duplicate, which is certified to the treasurer, and it then becomes a lien upon the taxpayer's property, having all the force and effect of a judgment at law, with all the summary remedies for enforcement hereinbefore set forth.    Surely we have here judicial powers and proceedings; and to the person who conducts these proceedings, and has the authority to enter such a judgment, should certainly be applied the disqualification of a direct personal interest in the result,—a test which we have seen is universally applied to judges and all persons exercising judicial powers.

But it is said these laws are made in the interest of the public, are necessary to secure the collection of public revenues, and none are injuriously affected by their arbitrary character but those who are trying to evade the payment of their just taxes.    Suppose we concede this to be true, it is still as much the duty of the court to pass upon these questions as though the entire public were clamoring against their injustice.    But the bill in this case avers that the testator made a full and true return of all his taxes for the years involved, and the demurrer admits this fact to be true.    This case is therefore not one to which such suggestion applies.    This court reluctantly interferes with the enforcement of state revenue laws, even when they affect only back taxes; and I am in full sympathy with those who believe that every citizen should pay taxes justly and legally imposed.    I would not interpose to aid those who are not willing to bear their just share of the public burdens, unless the taxes sought to be enforced have been imposed by proceedings not in harmony with those safeguards provided by the constitution, to which I have before referred.    Having, after very careful and painstaking investigation, reached the conclusion that these taxes have been illegally assessed it is the duty of the court to afford to all who are thereby wrongfully burdened such relief as the law provides.    The supreme court of Ohio has decided these laws constitutional, and the proceedings of the auditor thereunder valid. The question now under consideration in this court is not whether these laws are valid under the constitution of Ohio.    If it were, this court would be bound by that decision of the highest tribunal of the state.    But the question presented, being a federal question, and involving a construction of the constitution of the United States, the federal courts are charged with the duty and responsibility of

deciding it, unaffected by the decisions of the state courts, except so far as they may be persuasive. For the reasons already stated, I am of the opinion that the proceedings provided by section 2781 of the Revised Statutes of Ohio, when carried forward without due notice to the taxpayer, or when conducted by the auditor, who is directly interested in the proceeds collected under the assessment made and imposed, result in depriving the citizen of his property without due process of law, and are therefore invalid under the fourteenth amendment to the constitution of the United States.

I have in this opinion considered the questions involved upon the broad principles presented in construing the Ohio Statutes with reference to the inhibition of the foregoing amendment, unaffected by any special issues peculiar to the case now before me, because there are five other cases pending in this court, brought here by removal from the state courts. The questions considered and decided affect all these cases alike, and apply to all of them.

In the case now under consideration, exceptions were taken by counsel for the defendant that the allegations of the bill were defective, in that it was not averred that plaintiffs, as executors, had any property, real or personal, within the distraining process of the county treasurer, and that, therefore, no ground for equitable interference was shown. An amendment to the bill has been tendered since the argument and submission of the case, which meets these and other contentions. Counsel object to this amendment, because, if allowed, it cannot relate back and make valid the restraining order granted upon the original bill. But the amendment does not affect or relate to jurisdictional facts. The want of notice of the auditor's proceedings, his interest in the controversy, and the illegality of the tax, as a result of such averments, are all set forth in the original bill, and are a sufficient basis for the temporary injunction allowed. The amendment tendered, of which defendant's counsel had notice, relates to facts so manifestly incontestable that the plaintiffs ought to have the benefit of whatever effect they may have upon the questions involved, and is therefore allowed.

The demurrer, both to the original and amended bill, is overruled.