### BRINKERHOFF v. BRUMFIELD, County Treasurer.

### AULTMAN & TAYLOR CO. v. SAME.

#### (Circuit Court, N. D. Ohio, E. D. May 19, 1899.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DISQUALIFICATION BY INTEREST.

Rev. St. Ohio, § 2781, providing for an examination by the auditor as to property withheld from the tax list by the taxpayer, makes taxes found withheld delinquent from the time certified to the treasurer, and enforceable by distraint. Rev. St. Ohio, § 1071, allows the auditor a commission of 4 per cent. on all taxes so added to the tax duplicate. *Held* that, the functions of the auditor being judicial in their nature, his pecuniary interest renders proceedings conducted by him not due process of law within Const. Amend. art. 14.[1]

2. FEDERAL COURTS—EQUITABLE REMEDIES UNDER STATE LAWS—RESTRAINING COLLECTION OF TAX.

A remedy by injunction against the collection of an illegal tax, expressly provided by a state statute, may be applied by a federal court of equity in the state, notwithstanding the statute also provides for an action at law to recover back the tax when paid. Cummings v. Bank, 101 U. S. 153, followed.

Wm. A. Lynch, Harter & Krichbaum, Bell & Brinkerhoff, Cummings & McBride, and Bricker & Workman, for complainants.

Brucker & Cummins, Douglas & Mengert, and J. B. Jones, for respondent.

RICKS, District Judge. These two bills are filed against Charles Brumfield, treasurer of Richland county, Ohio, and, as they involve acts relating to both cases, we treat them together whenever it is necessary to refer to them in connection with the bills. These bills seek to enjoin the respondent, who is treasurer of Richland county, Ohio, from enforcing the collection of $228,899.79 of taxes and penalties from the Aultman & Taylor Company, and $162,918 of taxes and penalties from George Brinkerhoff, administrator of the estate of Michael D. Harter, deceased; and the aggregate, with interest claimed, amounts to nearly $500,000, which sums, the bills aver, stand illegally charged against the complainants on account of the taxes alleged to have been unlawfully and fraudulently withheld from the tax duplicate of the said county by the Aultman & Taylor Company and by George Brinkerhoff, administrator of the estate of Michael D. Harter, deceased, for the years 1893, 1894, 1895, 1896, 1897, and 1898. The Aultman & Taylor Company, in its bill, alleges that for said years

---

[1] As to due process of law in revenue proceedings, see note to Read v. Dingess, 8 C. C. A. 398.

it made full and complete returns of all its taxable property required to be listed, and that it had so far progressed in liquidating its affairs that, in 1897 and 1898, after deducting the sum of its legal bona fide debts from its taxable assets, there remained no credits, as defined by section 2730 of the Revised Statutes of Ohio, or other personal property, for it to return that was subject to taxation; that it made in said years, respectively, full and complete reports to the auditor of Richland county, Ohio, of such facts, with full written explanation of its property matters as affected by the taxing laws; that it never, at any time from 1893 to 1898, made any false return of its property for taxation; that it never evaded making a proper return, and that its return was never, at any time, fraudulent or evasive, but full and complete, as required by law.    The complainant George Brinkerhoff, administrator, alleges that his decedent, Michael D. Harter, in 1893 made a correct return of his property for taxation; that he then lived in Richland county, Ohio; that in the years 1894, 1895, and 1896 the said Michael D. Harter, decedent, was not a citizen or resident of the state of Ohio, but was in said years, and up to the time of his death, on February 22, 1896, a resident of the state of Pennsylvania; that he owned no personal property subject to taxation in Richland county during said years which the laws of Ohio required him to return for taxation; that for the years 1897 and 1898 the complainant, as administrator, held and controlled no property subject to taxation under the laws of Ohio for which returns should have been made. The bills of complaint further allege that for each of said years 1893 to 1898, inclusive, the auditor of Richland county, wrongfully claiming that said complainants had made false returns of their personal property for taxation, and claiming to act under the authority of sections 2781 and 2782 of the Revised Statutes of Ohio, placed upon the tax duplicate, and certified for collection against said complainants to the said Charles Brumfield, treasurer, taxes and penalties as follows:

Against the Aultman & Taylor Company:

| | | | | | |
|---|---|---|---|---|---|
| For 1893, | principal, | $1,264,500 00, | tax, | $35,785 | 35 |
| "   1894, | " | 1,264,500 00, | " | 35,532 | 45 |
| "   1895, | " | 1,264,500 00, | " | 35,785 | 35 |
| "   1896, | " | 1,264,500 00, | " | 36,544 | 05 |
| "   1897, | " | 1,264,500 00, | " | 37,049 | 85 |
| "   1898, | " | 1,264,500 00, | " | 37,302 | 75 |

Against George Brinkerhoff, administrator:

| | | | | | |
|---|---|---|---|---|---|
| For 1893, | principal, | $  900,000 00, | tax, | $25,470 | 00 |
| "   1894, | " | 900,000 00, | " | 25,290 | 00 |
| "   1895, | " | 900,000 00, | " | 25,470 | 00 |
| "   1896, | " | 900,000 00, | " | 26,110 | 00 |
| "   1897, | " | 900,000 00, | " | 26,370 | 00 |
| "   1898, | " | 900,000 00, | " | 26,550 | 00 |

The said sums included a penalty of 50 per cent. of the original amount claimed, which penalty was an infliction imposed by the auditor, and the said sums for each year, multiplied by the rate of taxation for each year, provided the basis and means by which said auditor arrived at the taxes claimed.    The bills further aver that the said taxes and penalties now stand charged for collection on the

face of the tax duplicates, and appear as debts, respectively, against the Aultman & Taylor Company and the estate of Michael D. Harter, deceased, to be collected by action or distraint; and that the said respondent, on the 1st day of February, 1899, began an action against each of said complainants in the court of common pleas of said county. The said bills of complaint aver that a federal question is presented, inasmuch as that the proceedings above narrated, if permitted to be carried out to their logical result, would deprive the complainants of their property without due process of law, and would be in contravention of the constitution of the United States.

The first contention presented by the issues is whether the notice, as given to the complainants, was such as was contemplated by the laws of Ohio. The facts show that the complainants were notified by the auditor to appear in his office to explain why certain property was not reported for taxation, and why certain personal property was withheld from the tax duplicate. Said hearing had been carried on, several witnesses had been examined, and it was then understood by the parties that further proceedings would be resumed after due notice was given. The allegations of the bills are (and the facts stated in the affidavits confirm these allegations) that immediately after the last adjournment the complainants were told that they would be notified if any further proceedings took place, and an opportunity would be given them to present any matters they might choose to place before the authorities before they disposed of this important question. Immediately after this assurance had been given, without waiting to give them additional notice, the respondent proceeded at once by suit against the complainants in the court of common pleas of Richland county. This suit was to recover the large amounts heretofore stated. It is contended on behalf of the complainants that such notices as they had were not sufficient to give them an opportunity to be fully heard, and that the proceedings had under such imperfect notices were not such as contemplated by the constitution of the United States, and were not due process of law. This court had occasion to examine these statutes very fully in the case of Meyers v. Shields, reported in 61 Fed. 713. In view of the opinion of the court on the second contention to be considered, it will not be necessary to consider any further the sufficiency of this notice. The facts, as they appear from the affidavits, tend to show that the officers charged with the collection of these taxes did not deal fairly with the complainants in their notices and proceedings before the auditor, and evidently intended to take advantage of them in prematurely instituting suits against them. It is but fair to state that the claim on the part of the county officers is that they were advised that the complainants were about to apply for an injunction, and that therefore these suits were instituted. Whether these notices were sufficient or not, we can proceed to the consideration of the second contention presented by the bills. The statutes of Ohio contemplate that after an examination such as the auditor held in these cases that officer was to make a report of the nature of the personal property he found to be withheld by the taxpayer from the tax list and from his report to the assessor, and from such facts

and examination to name the amount which he claimed was due to the state and county. Such report from the auditor was to be transcribed in a book prepared for that purpose in the auditor's office, and the auditor was to certify the same to the treasurer; and from that moment they became delinquent taxes and penalties, for which the treasurer might bring suit, coupled with the power of distraint to enforce the collection of the alleged delinquent taxes. The tribunal thus created by the laws of Ohio for the purpose of sitting in judgment upon delinquent taxpayers is, by reason of its composition and the powers vested in it, one of the most remarkable semi-judicial bodies known to the jurisprudence of any country. For instance: In the Aultman & Taylor Company case the tax and penalty demanded amounts, in round numbers, to $228,000; the auditor's commission for collecting this sum, 4 per cent., would be $9,120; the treasurer's commission, 5 per cent., would be $10,260; the inquisitor's portion, 20 per cent., would be $45,600; the total fees to the auditor, treasurer, and inquisitor, if they succeeded in enforcing their judicial decree or judgment against the Aultman & Taylor Company, would amount to $64,980. In the Brinkerhoff, administrator, case, the tax and penalty asked from the estate of Michael D. Harter is $162,000; the auditor's commission would be $6,480; the treasurer's commission, $8,100; the inquisitor's share, 20 per cent., $32,400; total for auditor, treasurer, and inquisitor in this case, $46,980. Summarizing the above figures, the fees of the auditor, treasurer, and tax inquisitor, if they succeeded in enforcing the collection of the amount of taxes stated from these two complainants, would be as follows: Auditor, $15,600; treasurer, $18,360; inquisitor, $78,000,—total, $111,960. In other words, we have here a court, constituted by the laws of Ohio, who are to sit in judgment upon the cases of these two complainants; and, in case they decide in favor of the state and against the complainants, their aggregate commission would be $111,960, and, if they decide the case in favor of the taxpayer and against the county and state, they would be without any compensation for their services.

In the case of Meyers v. Shields, heretofore cited, this court had occasion to consider the question as to whether the auditor, vested with these powers, was acting in a judicial capacity, and in that opinion the decisions of the supreme court of Ohio were cited in the cases of Gager v. Prout, 48 Ohio St. 110, 26 N. E. 1013, and State v. Crites, 48 Ohio St. 460, 26 N. E. 105. In such case the court, in referring to the auditor's proceedings, said:

"The respondent was acting in a quasi judicial capacity. He had assumed jurisdiction, and entered upon the investigation. The law imposed upon him the duty of hearing and weighing evidence and rendering a decision upon it. This necessarily involved the exercise of judicial discretion."

In the same opinion this court said:

"Having thus shown the judicial character of the duties which the auditor performs in the proceedings which have just been reviewed, how does the law say his direct pecuniary interest in the judgment he renders affects the validity of his proceedings? In Pearce v. Atwood, 13 Mass. 324, Chief Justice Parker said: 'It is very certain that by the principles of natural justice and of the common law no man can lawfully sit as a judge in a case in which he

may have a pecuniary interest. Any interest, however small, has been held to render a judge incompetent.' Lord Campbell said, in Dimes v. Grand Junction Canal, 3 H. L. Cas. 759: 'It is of the last importance that the maxim that no man is to be a judge in his own case should be held sacred, and that it is not to be confined to a cause in which he is a party, but applies to any cause in which he has an interest. We have again and again set aside proceedings because an individual who had an interest took part in the decision.' If one of the judges of a court is disqualified on this ground, the judgment will be void, even though the proper number may have concurred without the disqualified judge. The legislative voice has spoken in equally positive inhibitions against interested persons acting as judges, appraisers, road viewers, or commissioners. In Ohio statutory provisions are in force allowing a change of venue of the suit upon the mere affidavit of the parties of prejudice, bias, or interest."

In the Meyers Case the court continued its examination of the decisions of other courts, and found abundant authority for holding that a tribunal authorized to render arbitrary and summary judgments against citizens having so large a moneyed interest in the decrees and judgments to be rendered by them, was not such a judicial tribunal as contemplated 'by the constitution of the United States, and that the auditor, who was directly interested in the proceeds collected under the assessment, could not be said to be depriving the litigants before him of their property by due process of law. In view of the very lengthy opinion filed in the case of Meyers v. Shields, in which nearly all the law questions now presented were fully considered, I do not feel called upon, in the brief time I have to prepare an opinion in this case, to review the authorities, and state my opinion as to the law. It is sufficient to say that, so far as the claim that the bills in equity in these cases ought not to be entertained because the complainants have a complete and adequate remedy at law is concerned, the supreme court has removed every doubt on that point by its opinion in the case of Cummings v. Bank, 101 U. S. 153, and also by the opinion of Judge Taft, in the United States circuit court of appeals for the Sixth circuit, in Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498. If the statutes of Ohio did not specially provide that a taxpayer against whom illegal taxes had been assessed might secure relief against the collection of the same by a bill in equity and an injunction, the jurisdiction of this court might be in doubt. In view of the urgency under which this opinion is prepared, I can only say that the court adopts and reaffirms the conclusions and opinions announced in the case of Meyers v. Shields. This case has stood on the docket for five years, and the principles announced in it have been affirmed in several of the circuit and district courts of the United States, and until reversed it is authority to which the court can properly refer. A preliminary injunction will be allowed, in lieu of the restraining order heretofore entered, and the parties may prepare the case for final hearing on an application for a permanent injunction. An order will be entered dividing the 90 days as prescribed by the sixty-ninth rule in equity, so that the parties may have the case ready for hearing on its merits at the fall term.